**ORAL ARGUMENT NOT YET SCHEDULED**

---

Nos. 26-5299, 26-5334

---

In the United States Court of Appeals
for the District of Columbia Circuit

---

**Katie Phang**

*Plaintiff-Appellee*,

v.

**Todd Blanche**, in his official capacity
as Attorney General of the United States,

*Defendant-Appellant*.

---

On Appeal from Orders
of the United States District Court
for the District of Columbia

---

# APPELLANT'S MOTION FOR A STAY PENDING APPEAL AND MOTION TO EXPEDITE

---

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A. Parties and Amici

Plaintiff-Appellee Katie Phang is a lawyer and journalist based in Miami, Florida. Defendant-Appellant is Todd Blanche, in his official capacity as Attorney General of the United States.

K.L. Smith, Andrew Parker, and M. Eugene Gibbs-Squires, separately and in their individual capacities, each unsuccessfully attempted to intervene in the district court. "Jane Doe" moved to intervene and for leave for to proceed pseudonymously. That motion remains pending before the district court.

There were no additional parties or amici curiae in district court, and none have entered an appearance before this Court.

## B. Ruling Under Review

The rulings under review are the June 25, 2026, order (Dkt. 15) and memorandum opinion (Dkt. 16) and the September 16, 2026, memorandum opinion and order (Dkt. 43), issued by the Honorable Emmet G. Sullivan in *Phang v. Blanche*, No. 1:26-cv-01417 (D.D.C.). This motion seeks to say only the portions of those orders concerning foreign-language documents. As explained below, the June 25, 2026,

order directed Defendant to initiate review and production of foreign-language documents and provide notice to the court and parties that Defendant had done so. But the district court did not immediately enforce that order as it considered Defendant's further arguments that the court should not require such review and production. The September 16 order, however, definitively resolved that issue and required Defendant to initiate review and production of the documents and provide notice to the court and parties that Defendant had done so by September 24, 2026. Defendant thus seeks a stay of either or both of the June 25 order and September 16 order as necessary to stay this obligation.

**C. Related Cases**

This Court has consolidated case number 26-5299 (appeal of the June 25 order) and case number 26-5334 (appeal of the September 16 order).

## TABLE OF CONTENTS

TABLE OF CONTENTS ..... iii

INTRODUCTION ..... 1

BACKGROUND ..... 3

a. The EFTA ..... 3

b. Department Implementation ..... 4

c. Proposed EFTA II ..... 6

d. Procedural History ..... 7

LEGAL STANDARD ..... 11

ARGUMENT ..... 11

I. Defendant Will Suffer Severe Irreparable Harm Absent A Stay ..... 12

II. Defendant Is Likely To Succeed On The Merits ..... 14

a. Phang Lacks Authority To Enforce The EFTA ..... 14

i. Phang Lacks A Right Of Action ..... 14

ii. Phang Lacks Article III Standing ..... 19

b. The District Court Should Not Have Granted The Equivalent Of A Final Judgment ..... 23

i. The District Court Improperly Gave Phang Full Relief ..... 23

ii. A Fuller Merits Presentation Would Necessitate Review Under A Different Standard ..... 24

III. The Remaining Factors Favor A Stay ..... 26

CONCLUSION ........................................................................................ 27

CERTIFICATE OF COMPLIANCE

ATTACHMENT A: District Court June 26 PI Order and Opinion
ATTACHMENT B: District Court September 16 Order
ATTACHMENT C: District Court Order Denying Motion to Stay

## INTRODUCTION

The Epstein Files Transparency Act (EFTA) required the Department of Justice to compile, review, and release millions of documents while withholding and redacting documents to protect victims and sensitive information. The EFTA also promotes transparency and accountability by requiring reporting to Congress and in the Federal Register. But Congress chose not to include a private right of action. In fact, some members of Congress have proposed a bill—the "Epstein Files Transparency Act II"—that would amend the EFTA to create a private right of action against the Attorney General for victims and certain public officials. If the EFTA were privately enforceable by a broad range of interested litigants, this narrower proposal would be superfluous. Yet the district court held that Katie Phang—who would not even have a right of action under the EFTA II—could sue the Attorney General under the Administrative Procedure Act (APA) to privately enforce the EFTA. The court has ordered the Department to initiate review and production of foreign-language documents by September 24, 2026 (though it has temporarily stayed that deadline pending resolution of this motion). This Court should stay the district court's orders pending appeal.

If not stayed, the district court's orders will irreversibly alter the status quo, harm the Department, and potentially moot this appeal—even though Defendant is likely to succeed on appeal. Phang cannot privately enforce the EFTA because she lacks both a cause of action and Article III standing. And at the preliminary-injunction stage, the district court should not have granted Phang an injunction that amounts to a final judgment. Defendant raised only threshold arguments in opposition to Phang's preliminary-injunction motion. And a party is not bound by the arguments it raises in opposition to such a motion. But in granting all the relief Phang seeks as to these documents, the district court never purported to apply the legal standard for an APA claim to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

The other relevant factors likewise favor a stay pending appeal. Phang will suffer little harm from a brief delay during an expedited appeal. And the public has a strong interest in an appellate resolution of the issues presented, which could be mooted absent a stay.

This Court should therefore stay the orders pending appeal. Because the district court has entered a temporary stay, this Court should expedite briefing on and resolution of this motion.

## BACKGROUND

### a. The EFTA

The EFTA requires the Attorney General to "make publicly available . . . all unclassified records, documents, communications, and investigative materials in the possession of the Department. . . that relate to . . . Jeffrey Epstein." Pub. L. No. 119-38, 139 Stat. 656 (2025) (EFTA) § 2(a)(1); *see also id.* § 2(a)(2)-(9) (enumerating categories of materials). The Department "may withhold or redact segregable portions of records" for various reasons. EFTA § 2(c)(1). For example, the Attorney General can withhold records that "contain personally identifiable information of victims . . . and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 2(c)(1)(A). Any redactions are required to "be accompanied by a written justification in the Federal Register and submitted to Congress." EFTA § 2(c)(1), (2).

The EFTA also provides that "the Attorney General shall submit to the House and Senate Committees on the Judiciary a report" describing releases, withholdings, redactions, and a list of officials and politically exposed persons named in the released materials. EFTA § 3.

The EFTA did not provide resources or appropriations to the Department for the review of these millions of pages of documents.

**b. Department Implementation**

The Department pulled many attorneys away from their important duties to complete the work required by the EFTA. On December 19, 2025, then-Deputy Attorney General Blanche wrote Congress that the Department was "producing hundreds of thousands of pages of responsive materials in compliance with" the EFTA. Letter from Todd Blanche, Deputy U.S. Att'y Gen., to Members of Congress at 1.[1] The Department had "solicited counsel for any victims of Jeffrey Epstein and invited counsel to provide [the Department] with names of victims, whether previously identified or not." *Id.* This resulted in "over 1,200 names being identified as victims or their relatives," which the Department redacted. *Id.*

[1] https://www.justice.gov/opa/media/1434851/dl?inline.

The Department shared its review protocol in a January 4, 2026, memorandum. Department of Justice, *Attorney Review Protocol for Epstein Files* (Review Protocol).[2] As relevant here, the protocol instructed reviewers to apply a "Foreign language" tag if applicable. *Id.* at 3.

On January 30, 2026, the Department announced and described its production of millions of pages of records. Department of Justice, *Epstein Files Transparency Act–Production of Department Materials* (Jan. 30, 2026).[3] In doing so, the Department advised Congress regarding "foreign language documents and technically incompatible documents," and explained that its "collection of documents included pages in various foreign languages." *Id.* at 5. "Because it was not practicable for a first-level reviewer to determine the responsiveness of a foreign-language document, those pages have not been produced." *Id.*

On February 14, 2026, the Department sent the Senate Judiciary Committee and House Judiciary Committee the report required by section 3 of the EFTA. *See* Letter from Blanche, Deputy U.S. Att'y Gen.

---

[2] https://www.justice.gov/media/1426281/dl?inline.

[3] https://www.justice.gov/opa/media/1426091/dl.

to Chairman Grassley, Ranking Member Durbin, Chairman Jordan, Ranking Member Raskin (Feb. 14, 2026).[4] The Department has since published the same report in the Federal Register. 91 Fed. Reg. 55,356 (Aug. 27, 2026).[5] The Department has also invited members of Congress to view unredacted versions of the released records.

**c. Proposed EFTA II**

On July 15, 2026, Representatives Massie, Khanna, and Leger Fernandez proposed a bill called the "Epstein Files Transparency Act II." *See* H.R. 9694. The EFTA II would amend the EFTA to authorize "[t]he attorney general of a State, a district attorney, or other authorized State officer" ("on behalf of such State or the residents thereof") or "a victim" ("on behalf of such victim") to "bring an action . . . against the Attorney General of the United States alleging an unlawful withholding, redaction, delay, removal, concealment, failure to publish, failure to produce, or failure to justify a withholding or redaction of a record, document, communication, or investigative material described in section

[4] https://www.justice.gov/opa/media/1434856/dl?inline.

[5] https://www.govinfo.gov/content/pkg/FR-2026-08-27/pdf/2026-17533.pdf.

2(a)" of the EFTA. *Id.* § 4(a)(1). The proposed bill does not address foreign language documents. Nor has EFTA II become law.

**d. Procedural History**

In April 2026, Phang sued then-acting Attorney General Blanche in an effort to privately enforce the EFTA. *See* ECF 1. On May 28, 2026, Phang moved for a preliminary injunction. ECF No. 9-1. Her motion focused on five categories of alleged violations concerning withholdings, redactions, and a redaction log. *See id.* at 35-36. For example, she alleged a failure to review and produce foreign-language materials that she claims are covered by the EFTA. *Id.*

On June 25, 2026, the district court entered an order styled as granting Phang's preliminary injunction motion. Add.1 (order), Add.3 (memorandum opinion). The court held that Phang could privately enforce the EFTA through the APA. Add.20. And because the government had raised only threshold arguments in response to Phang's motion, the court treated the merits as "conceded." Add.38. Defendant had preemptively requested a stay of the court's June 25 order. Add.50. But the district court denied that request on the ground that the EFTA had required the release of documents by December 19, 2025. *Id.*

That said, the district court did not require immediate action by the government—or at least did not enforce any such requirement. The court's order stated that by July 2, 2026, Defendant shall take certain actions. Add.1. As to redactions, withholdings, and a redaction log, the court ordered Defendant to "either" disclose the relevant items "or show cause" why Defendant should not do so. Add.1-2. As to the foreign language documents, the court ordered Defendant to "initiate review and production of foreign-language materials that may be subject to production under the [EFTA], and provide notice to the Court and all parties that such review is underway." Add.2.

On July 2, 2026, Defendant filed a response explaining its understanding, based on language in the court's opinion and order, that the court had "not ordered 'the immediate production of documents.'" ECF 19 at 2 (quoting ECF 16 at 48). Defendant then addressed each category of relief. As to foreign language documents, Defendant explained that the Department had advised Congress that the documents had not been reviewed and produced due to practical obstacles—and argued that the court should not supplant Congress's apparent acceptance of this explanation. *Id.* at 14.

So began a dialogue regarding Defendant's compliance with the EFTA and the order. After Phang asked the court to hold the Department in contempt regarding the foreign language documents, ECF 20 at 3, 10, the Department explained that it had sought to comply with the court's order by providing further explanation as to each category of relief, ECF 22 at 3.

The court discussed these issues at an August 13, 2026, hearing. The court stated that it did not agree with the Department's explanation regarding the foreign-language documents. ECF 34 at 29-30. And the court stated it had now "learned everything it's going to learn about the government's position vis a vis the foreign language documents." *Id.* at 32. At that point, the court did not further order Defendant to do anything. Instead, the court acknowledged Defendant's concerns over the definitiveness and appealability of the June 25 order and explained that it would "resolve that issue when the Court rules on defendant's responses to the preliminary injunction order." *Id.* at 33.

On August 24, 2026, Defendant filed a protective notice of appeal as to the court's June 25 order. ECF 35.

On September 16, 2026, the district court discharged portions of the June 25 order while ordering Defendant to produce certain documents for *in camera* review. Add.51. Proceedings are ongoing as to the four categories of relief other than the foreign-language documents.

By contrast, the September 16 order marked the district court's definitive resolution of the foreign language documents issue. The court rejected Defendant's argument. Add.55-56, 63-66. But the court also rejected Phang's argument that the court should hold Defendant in civil contempt for not having initiated review and production. *Id.* The court then "order[ed] Defendant to initiate review and production of foreign-language materials." Add.66. And the court required Defendant to "provide notice to the Court and all parties that such review is underway by a date certain" and set a September 24, 2026, deadline. Add.66,69.

On September 18, 2026, Defendant moved the district court for a stay pending appeal. ECF 46. On September 21, 2026, the court denied that motion. Add.71. The court relied on Local Civil Rule 7(m)'s meet-and-confer requirement. Add.73-74. But the court also stated that, regardless of the local rules, "the Court would deny" the stay motion "for

the reasons explained" in the court's June 25 opinion. *Id.* at 4.[6] The court granted a temporary stay pending this Court's resolution of this motion.

**LEGAL STANDARD**

In considering whether to grant a stay pending appeal, this Court asks whether (1) the applicant "is likely to succeed on the merits," (2) the applicant "will be irreparably injured absent a stay," (3) a stay will not "substantially injure" other interested parties, and (4) a stay is in the "public interest." *Nat'l Treasury Emps. Union v. Trump*, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025). This Court has also granted stays pending appeal when "a serious legal question is presented" and when the "irreparable injury" factor strongly favors a stay. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).

**ARGUMENT**

Every factor favors a stay. Defendant faces overwhelming irreparable harm absent a stay, including the possibility that the government will be deprived of any opportunity for appellate review in

---

[6] Defendant thus exhausted in the district court. Fed. R. App. P. 8(a)(1); *Chemical Weapons Working Grp. v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996).

this case of first impression. Defendant is also likely to succeed on the merits, because Phang cannot enforce the EFTA and the district court prematurely awarded her what amounts to a final judgment, without ever considering the correct legal standard. Any (comparatively minor) harm to Phang is belied by her delay in seeking a preliminary injunction and would be mitigated by an expedited appeal. The public also has a strong interest in appellate resolution of the question whether private parties can enforce the EFTA.

## I. Defendant Will Suffer Severe Irreparable Harm Absent A Stay

When relief without a stay would "irreversibly alter[]" the status quo, a movant demonstrates irreparable harm. *See Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978).

That is the case here. The court is ordering the Department, which put unprecedented resources into reviewing and releasing millions of pages of documents, to re-start that process and review and produce documents in various foreign languages. Of course, engaging in a review process cannot be undone. And without a stay, Defendant would likely be required "to release documents prior to having the opportunity to seek meaningful appellate review." *People for the Am. Way Found. v. U.S.*

*Dep't of Educ.*, 518 F. Supp. 2d 173, 177 (D.D.C. 2007). That "disclosure" would all but "moot" an appeal of the district court's order, which "create[s] an irreparable injury." *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers). "Once the documents are surrendered … [t]he status quo could never be restored," and "[f]ailure to grant a stay will entirely destroy appellants' rights to secure meaningful review." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979). That is why "stays are routinely granted in FOIA cases." *Center for National Security Studies v. U.S. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002). This case is not materially different.

To be clear, Defendant has not delayed in seeking this stay or asserting this harm—let alone in a manner that could undercut Defendant's irreparable harm. Defendant preemptively sought a stay of the June 25 order, then sought a stay of the September 16 order within two days. Defendant did not ask this Court to stay the June 25 order in the meantime because the district court was not clearly requiring Defendant to take immediate action. There was no need to short-circuit the ongoing dialogue between Defendant and the district court. But with

the September 16 order, Defendant now faces imminent irreparable harm.

## II. Defendant Is Likely To Succeed On The Merits

### a. Phang Lacks Authority To Enforce The EFTA

#### i. Phang Lacks A Right Of Action

It is undisputed that the EFTA itself does not create a private right of action. The district court nevertheless held that private citizens can enforce the EFTA through the APA. That is incorrect.

Under 5 U.S.C. § 701(a)(1), the APA does not apply when "statutes preclude judicial review." When a statutory scheme omits a right to review—and when there is good reason to think that omission "is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment"—the omission means that "Congress deliberately intended to foreclose … review of such claims." *United States v. Fausto*, 484 U.S. 439, 448 (1988) (quoting *United States v. Erika, Inc.*, 456 U.S. 201, 208 (1982)).

The EFTA's "express language, … the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved" all support the conclusion that this

statutory scheme "precludes judicial review." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984). As a general matter, the Freedom of Information Act (FOIA) serves as the vehicle for citizens who want to "know what their government is up to." *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994) (citation omitted). The EFTA requires broader public disclosure than FOIA. *See* Department of Justice, *EFTA-FOIA Crosswalk*.[7] But the EFTA omits any private right of action while including other accountability and transparency measures, such as reporting to Congress and in the Federal Register. This specialized scheme strongly suggests that the omission of a private right of action was intentional.

Even if the EFTA and FOIA could not be read together to affirmatively foreclose judicial review, the APA would still not provide a right of action. Under 5 U.S.C. § 704, judicial review under the APA is available only as to "final agency action for which there is no other adequate remedy in a court." This limitation "reflects Congress' judgment that 'the general grant of review in the APA' ought not [to] 'duplicate existing procedures for review of agency action' or 'provide

[7] *Available at* https://www.justice.gov/oip/media/1438931/dl?inline.

additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Responsibility and Ethics in Washington ("CREW") v. Dep't of Just.*, 846 F.3d 1235, 1245-46 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)).

Here, the EFTA and FOIA provide such special and adequate procedures, even if Phang cannot get the documents she seeks under them. Courts have repeatedly held that "FOIA is the exclusive remedy for obtaining [purportedly] improperly withheld agency records." *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011) (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 777 (D.C. Cir. 2002)); *see also, e.g.*, *Chaverra v. ICE*, Civ. A. No. 18-289 (JEB), 2018 WL 4762259, at *3 (D.D.C. Oct. 2, 2018) ("FOIA offers an adequate remedy within the meaning of section 704" when litigants seek to "access … records." (citations omitted)).

The district court's contrary ruling misunderstands what counts as an adequate remedy under the APA. The district court held there was no adequate remedy because Phang "likely would not be able to obtain" the unredacted documents she seeks because "they would likely be

subject to [FOIA] exemptions" on disclosure. ECF 16 at 30. But it does not matter that FOIA "exemptions might apply," because "[i]t is well settled that the alternate remedy must be only of the 'same genre'; it need not be identical." *Chaverra*, 2018 WL 4762259, at *4 (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (alternative remedy "need not provide relief identical to relief under the APA, so long as it offers relief of the same genre")); *accord El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). "The relevant 'genre' here is easy to identify: the disclosure of documents[.]" *Chaverra*, 2018 WL 4762259, at *4. "That is what Plaintiff seeks, and that is what FOIA provides." *Id.* "[T]he possibility that a plaintiff 'might fare worse' under FOIA does not entitle her to bring a claim under the APA." *Id.* (citation omitted).

That the EFTA is itself a disclosure law only reinforces the unavailability of judicial review. FOIA shows that Congress "knew how" to create private rights when it was drafting the EFTA—"[b]ut it did not." *Cf. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994). The EFTA and FOIA thus "strike[] the

balance between statutory duties and judicial enforcement that Congress desired." *CREW*, 846 F.3d at 1245.

That Congressional choice is especially stark here. Consistent with the proposed text, the press release describing the EFTA II indicates that the bill's lead purpose is to "[c]reate[] a private right of action."[8] To be sure, the proposed bill states that "the enforcement avenues provided under this Act shall be deemed cumulative of, and in addition to, any such cause of action, claim, or remedy otherwise available at law or in equity." H.R. 9694 § 4(a)(5). But there would be no need for the key provision of the EFTA II if private parties could enforce the EFTA through the APA.

Ignoring Congress's choice would also have problematic consequences. Courts would likely be flooded with piecemeal litigation over an untold number of purported EFTA records while disincentivizing Congress from acting to address any lingering concerns. The better approach is for such matters to be "hashed out in the hurly-burly, the give-and-take of the political process between the legislative and

---

[8] Ro Khanna, *Press Release, Khanna, Massie, Leger Fernandez, Merkley, Lujan Introduce the "Epstein Files Transparency Act II"* (Aug. 5, 2026), *available at* https://perma.cc/WL6A-QD6K.

executive." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 859 (2020). That political process would better serve the interests of transparency and (where appropriate) privacy than a flood of litigation and scattershot judicial enforcement.

### ii. Phang Lacks Article III Standing

Even if Phang could identify a back-door cause of action in the APA, she would lack standing. To establish standing, among other requirements, Phang must show that she has "suffered an injury in fact—an invasion of a legally protected interest which is … concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Phang seeks to enforce a statutory obligation to make certain information publicly available. But Congress has not provided any particularized right to the information; instead, Congress has created a general obligation. Phang thus impermissibly advances a "generalized grievance" that the government is not complying with the law. *United States v. Richardson*, 418 U.S. 166, 176 (1974).

*Richardson* is instructive. The plaintiff sought to enforce a provision of the Appropriations Clause requiring that "a regular Statement and Account of the Receipts and Expenditures of all public

Money shall be published from time to time." 418 U.S. at 168 (quoting U.S. Const. art. I, § 9, cl. 7). The Supreme Court held that the plaintiff lacked standing. The plaintiff had tried to manufacture a "personal stake" based on his efforts to "follow the actions of Congress [and] the Executive" and to "properly fulfill his obligations as a member of the electorate in voting for candidates." *Id.* at 176 (quotation omitted). But the Court concluded that was "the kind of a generalized grievance" that fails Article III's requirements, because "the impact on [the plaintiff] is plainly undifferentiated and common to all members of the public." *Id.* at 176-77 (quotation omitted). That was true even though the plaintiff explained how he intended to use the information he sought. *Id.* at 176. The Court recognized that its decision might mean that no plaintiff could "litigate this issue." *Id.* at 179. But that just "support[ed] to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process." *Id.*

Thus, the asserted violation of a disclosure obligation does not, by itself, generate a particularized injury. For example, some portions of FOIA vest members of the public with an individualized right to records. *See Prisology, Inc. v. Federal Bureau of Prisons*, 852 F.3d 1114, 1117

(D.C. Cir. 2017) (FOIA "requires an agency to make nonexempt records" "available to any person upon that person's request" (quotation omitted)). But other FOIA provisions merely direct federal agencies to make certain records "electronically available to the public." *Id.* at 1115. The "alleged failure to publish" such information does not—in the absence of some "particularized" "right to receive" the information—generate Article III standing. *Id.* at 1116-17.

In short, to satisfy the particularized injury requirement, a plaintiff seeking to compel disclosure must identify not merely a statute that imposes an obligation on the agency but also a statute that confers a particular right on the plaintiff. In the similar context of determining whether a Spending Clause statute creates enforceable individual rights, the Supreme Court has recently explained that courts should focus on whether "the law in question clearly and unambiguously uses rights-creating terms" and whether it "display[s] an unmistakable focus on individuals like the plaintiff." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 368 (2025) (alterations and quotation omitted).

Phang cannot identify any particularized right the EFTA grants her. To the extent the EFTA reflects a concern with recipients of

information, the EFTA is concerned with Congress and the public writ large—not private parties.

This conclusion is reinforced by Phang's descriptions of her interest. Phang seeks "complete truth for survivors" and "the maximum possible level of transparency." ECF 9-1 at 13. She has even asked the district court to "[o]verse Defendant's compliance with the law through the appointment of a special master." ECF 1 at 15. Although the district court has not gone that far, it has cited "concerns with any potential judicial redress for victims" and the "high level of interest in the Epstein Files combined the upcoming midterm elections" when assessing purported harm to Phang. ECF 16 at 39, 40. But "[v]indicating the public interest (including the public interest in Government observance of the law) is the function of Congress and the Chief Executive," *Lujan*, 504 U.S. at 576—not private litigants seeking to usurp the prerogative of the political branches to work out any disagreements.

Nor can Phang overcome these problems by asserting that she would use the information in particular ways or could derive speculative economic benefits from it. Phang is no different from the plaintiff in *Richardson*, who also detailed the ways in which he would have used the

information. 418 U.S. at 176. Additionally, "speculation and hoped-for" financial gain based on what disclosed records might or might not contain "will not suffice to invoke the federal judicial power." *Cf. Diamond v. Charles*, 476 U.S. 54, 66 (1986) (citation omitted).

#### b. The District Court Should Not Have Granted The Equivalent Of A Final Judgment

##### i. The District Court Improperly Gave Phang Full Relief

"It is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). It is similarly improper for a preliminary injunction to "work to give a party essentially the full relief [s]he seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969). The Supreme Court has recently emphasized that preliminary injunctions are not supposed to "conclusively resolve legal disputes." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). That is why "preliminary injunctions are ordinarily not awarded in FOIA cases." *Ctr. for Pub. Integrity v. United States Dept of Def.*, 411 F. Supp. 3d 5, 10 (D.D.C. 2019); *see also Org. of Am. Historians v. OMB*, 834 F. Supp. 3d

105, 110 (D.D.C. 2026) (courts should not grant preliminary injunctions that require the release of records).

The district court has erroneously given Phang the full relief that she seeks as to the foreign-language documents. And that error has consequences. At this stage, the parties have not "had the benefit … of a full opportunity to present their cases." *Camenisch*, 451 U.S. at 396. Thus, "a party addressing only issues of preliminary relief should not ordinarily be bound by its abbreviated and only partially informed presentation of the merits." 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2950 n.14 (3d ed. Apr. 2026 update). But the district court's order effectively binds Defendant, who raised only threshold arguments in opposition to Phang's preliminary-injunction motion, in that manner. If the court is to grant Phang such relief, it should have waited until or converted the proceedings to a stage where the merits, not the *likely* merits, are supposed to be assessed.

#### ii. A Fuller Merits Presentation Would Necessitate Review Under A Different Standard

The applicable APA standard (if Phang could bring an APA claim) illustrates the problem with the district court's approach. Phang is seeking to compel the Department to do something. But to the extent the

APA contemplates actions to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), "the only agency action that can be compelled under the APA is action legally required," *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). This refers to "specific, unequivocal command[s] . . . about which an official ha[s] no discretion whatever." *Id.* (internal quotation marks and alterations omitted). "If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *Id.* at 66-67.

The district court did not apply these principles, because Defendant raised only threshold arguments. But that should not have been the end of the matter. Under the right standard, the EFTA contains no express, specific command regarding foreign language documents. And if the district court were going to order not only the review and production of documents, but also the initiation of that process by a date certain, the

court should also have considered the factors pertinent to claims of unreasonable agency delay set forth in *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984); *see also American Hosp. Ass'n v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016) (statutory deadlines are not dispositive).

**III. The Remaining Factors Favor A Stay**

Phang will suffer little harm from a stay during an expedited appeal. For one thing, she did not move for a preliminary injunction until nearly four months after the Department announced it had fulfilled its EFTA disclosure obligations. *See Gordon v. Holder*, 632 F.3d 722, 724-25 (D.C. Cir. 2011). For another, Defendant will seek an expedited appeal, such that "any delay will be minimized." *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003). At a minimum, any harm to Phang is far outweighed by harm to Defendant given the possibility of mootness. The records that Phang seeks are not going anywhere. They could be reviewed by her in the future. But they cannot be unreviewed or unproduced in the future.

For similar reasons, the public interest favors a stay. The public has a strong interest in appellate resolution of the question whether and how the EFTA is privately enforceable.

## CONCLUSION

This Court should stay the district court's June 25 and September 16 orders pending appeal. The Court should also expedite consideration of this motion in light of the district court's temporary stay.

Respectfully submitted,

**Stanley E. Woodward, Jr.**
Associate Attorney General

s/Michael Weisbuch
**Michael Weisbuch**
Deputy Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530-0001
(202) 322-2450
Michael.Weisbuch@usdoj.gov

**Andrew J. Block**
Senior Counsel to the Associate Attorney General

**James N. Cirignano**
Counsel to the Associate Attorney General

Dated: September 22, 2026

*Counsel for Appellant*

**Certificate of Compliance for Papers**
**Submitted Under Fed. R. App. P. 27(d)(2)(A)**

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,051 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word for Microsoft 365 MSO (Version 2608 Build 20326.20142 Click-to-Run).

Dated: September 22, 2026

s/Michael Weisbuch
**Michael Weisbuch**
Deputy Associate Attorney General

# Attachment A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATIE PHANG,<br><br>Plaintiff,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States,<br><br>Defendant. | Civil Action No. 26-1417 (EGS) |

**ORDER**

For the reasons stated in the accompanying Memorandum Opinion issued this day, it is hereby

**ORDERED** that Ms. Phang's Motion for Preliminary Injunction, ECF No. 9-1, is **GRANTED**; and it is further

**ORDERED** that by no later than July 2, 2026, the Attorney General shall:

(1) either produce to the public the emails bearing Bates numbers EFTA00749245, EFTA01187999, EFTA01930501, ETFA01928255, EFTA00628112, EFTA02648868, EFTA02504630, and EFTA01022356 with sender and recipient names unredacted, or show cause why the redactions should not be removed;

(2) either produce to the public the DOJ documents bearing Bates numbers EFTA01703108 and EFTA00038227

with potential co-conspirator names unredacted, or show cause why the redactions should not be removed;

(3) either produce to the public the underlying FBI interview notes that formed the basis for the FD-302 interview reports bearing Bates numbers EFTA01245620, EFTA02858481, EFTA02858491, and EFTA02858495, with appropriate redactions to protect victims' information, or show cause why the notes should not be produced;

(4) initiate review and production of foreign-language materials that may be subject to production under the Epstein Files Transparency Act, and provide notice to the Court and all parties that such review is underway; and

(5) either publish in the Federal Register the redaction log required under Epstein Files Transparency Act § 2(C)(2), and update it concurrently with each future release of redacted materials; or show cause why he cannot do so.

**SO ORDERED.**

**Signed: Emmet G. Sullivan**
**United States District Judge**
**June 25, 2026**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATIE PHANG,<br><br>Plaintiff,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States,<br><br>Defendant. | Civil Action No. 26-1417 (EGS) |

## MEMORANDUM OPINION

Responding to public demands for information, Congress with near unanimity passed the Epstein Files Transparency Act (the "Epstein Act"), Pub. L. No. 119-38 on November 18 and 19, 2025, which President Trump signed into law on November 19, 2025. The Epstein Act is an unprecedented disclosure law requiring the Attorney General, with few exceptions, to make publicly available in a searchable and downloadable database all unclassified Department of Justice ("Department") files related to its investigation of the notorious sexual predator and child sex trafficker Jeffrey Epstein, the child sex trafficker Ghislaine Maxwell, and their associates. The Epstein Act required extremely timely compliance: the Attorney General was required to make the information publicly available by December

19, 2025. The Attorney General made productions on December 19, 20, 22, and 23, 2025, and January 30, 2026. Following the production of approximately 3.5 million pages of documents, the Attorney General announced that the Department had complied with its production obligations under the Epstein Act on January 30, 2026.

Katie Phang ("Ms. Phang") brings this action against Todd Blanche in his official capacity as Acting Attorney General of the United States (the "Attorney General"), claiming that he has improperly withheld information and failed to comply with other requirements in violation of the Epstein Act. Pending before the Court is Ms. Phang's Motion for Preliminary Injunction in which she seeks relief for a limited list of violations of the Epstein Act. *See* Application for Prelim. Inj., ECF No. 9; and Mem. of Points and Auths. in Support of Application for a Prelim. Inj. (collectively "Mot."), ECF No. 9-1. Upon careful consideration of Ms. Phang's motion, the Attorney General's opposition, the reply, the applicable law; and for the reasons discussed below, the Court **GRANTS** Ms. Phang's motion.

## I. Background

### A. Statutory and Factual Background

#### 1. The Epstein Act

The Epstein Act was passed with near unanimity by the House of Representatives on November 18, 2025; by unanimous consent in

the Senate on November 19, 2025; and signed into law by President Trump on the same day. *See* Clerk, United States House of Representatives, *Roll Call 289 | Bill Number: H.R. 4405*, https://clerk.house.gov/Votes/2025289 (last accessed June 22, 2026) (reporting that the roll call vote in the House of Representatives was 427 ayes, 1 no, and 5 not voting); 171 119 Cong. Rec. S8211 (daily ed. Nov. 19, 2025) (reporting passage in the Senate by unanimous consent). It requires the release of documents relating to Mr. Epstein, subject to five permitted grounds for withholding, requires any redactions to be accompanied by a written justification published in the Federal Register, and a report to Congress upon the completion of the release of records.

Section 2(a) of the Act requires the Attorney General, within 30 days after enactment, and subject to the prohibited and permitted grounds for withholding, to "make publicly available in a searchable and downloadable format all unclassified records, documents, communications, and investigative materials in the possession of the Department of Justice, including the Federal Bureau of Investigation and United States Attorneys' Offices, that relate to[:]"

> (1) Jeffrey Epstein including all investigations, prosecutions, or custodial matters.
>
> (2) Ghislaine Maxwell.

(3) Flight logs or travel records, including but not limited to manifests, itineraries, pilot records, and customs or immigration documentation, for any aircraft, vessel, or vehicle owned, operated, or used by Jeffrey Epstein or any related entity.

(4) Individuals, including government officials, named or referenced in connection with Epstein's criminal activities, civil settlements, immunity or plea agreements, or investigatory proceedings.

(5) Entities (corporate, nonprofit, academic, or governmental) with known or alleged ties to Epstein's trafficking or financial networks.

(6) Any immunity deals, non-prosecution agreements, plea bargains, or sealed settlements involving Epstein or his associates.

(7) Internal DOJ communications, including emails, memos, meeting notes, concerning decisions to charge, not charge, investigate, or decline to investigate Epstein or his associates.

(8) All communications, memoranda, directives, logs, or metadata concerning the destruction, deletion, alteration, misplacement, or concealment of documents, recordings, or electronic data related to Epstein, his associates, his detention and death, or any investigative files.

(9) Documentation of Epstein's detention or death, including incident reports, witness interviews, medical examiner files, autopsy reports, and written records detailing the circumstances and cause of death.

Epstein Act § 2(a)(1)-(9).

Section 2(b), entitled "Prohibited Grounds for Withholding" provides that "[n]o record shall be withheld, delayed or redacted on the basis of embarrassment, reputational harm, or political sensitivity, including to any government official, public figure, or foreign dignitary." Epstein Act § 2(a)(1)-(9).

Section 2(c), entitled "Permitted Withholdings" identifies five categories of records for which the Attorney General "may withhold or redact the segregable portions," and requires all redactions to "be accompanied by a written justification published in the Federal Register and submitted to Congress." Epstein Act § 2(c)(1), (2). The five categories of permitted withholdings are records that:

> (A) contain personally identifiable information of victims or victims' personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
>
> (B) depict or contain child sexual abuse materials (CSAM) as defined under 18 U.S.C. 2256 and prohibited under 18 U.S.C. 2252–2252A;
>
> (C) would jeopardize an active federal investigation or ongoing prosecution, provided that such withholding is narrowly tailored and temporary;
>
> (D) depict or contain images of death, physical abuse, or injury of any person; or

> (E) contain information specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive order.

Epstein Act § 2(c)(1)(A)-(E).

Section 2(c) also addresses classified information and requires the Attorney General to declassify such information "to the maximum extent possible." Epstein Act § 2(c)(3). For information that cannot be declassified, the Attorney General is required to "release an unclassified summary for each of the redacted or withheld classified information." Epstein Act § 2(c)(3)(A). Decisions to classify information covered by the Epstein Act after July 1, 2025 "shall be published in the Federal Register and submitted to Congress, including the date of classification, the identity of the classifying authority, and an unclassified summary of the justification." Epstein Act § 2(c)(4).

Section 3, entitled "Report to Congress," provides that within fifteen days of the public release of the materials required by the Act, "the Attorney General shall submit to the House and Senate Committees on the Judiciary a report listing:"

> (1) All categories of records released and withheld.
>
> (2) A summary of redactions made, including legal basis.

> (3) A list of all government officials and politically exposed persons named or referenced in the released materials, with no redactions permitted under subsection (b)(1).

Epstein Act § 3.

**2. The Attorney General's Efforts to Comply with the Epstein Act**

The Epstein Act required the government to comply with its requirements by December 19, 2025. *See* Epstein Act § 2(a). On that date, the Attorney General issued a letter to Congress stating that the Department was "producing hundreds of thousands of pages of responsive materials in compliance with the [Epstein Act]." Letter from Todd Blanche, Deputy U.S. Att'y Gen., to Members of Congress at 1 (Dec. 19, 2025), Exhibit D to Ward-Packard Decl., ECF No. 9-3.[1] The letter stated that "the Department is continuing to review additional documents and other items for potential responsiveness," noting that responsive documents are being provided to the Department by the Department's components on an ongoing basis. *Id.* The letter

[1] Except for citations to the Attorney General's letters of December 19, 2025; January 30, 2026; February 2, 2026; and February 14, 2026; and the Department's letters of April 23, 2026, and May 8, 2026; where the citation to the original page number of the respective letter is provided, the Court cites to the ECF header page number of electronic filings throughout this Memorandum Opinion, not the original page number of the filed document.

stated that in addition to withholdings and redactions permitted under section 2(c) of the Epstein Act, the Department "withheld and redacted a limited amount of information otherwise covered by various privileges, including deliberative-process privilege, work-product privilege, and attorney-client privilege." *Id.* at 2. The letter stated that "[a] privilege log will be produced in due course," and that "the Department will provide an explanation for any redacted and withheld materials as part of this production" as required by section 2(c)(2) of the Epstein Act. *Id.* at 3, 4. The letter acknowledged that the Department did not publicly produce all responsive material by the deadline, stating that "the volume of materials to be reviewed—many of which continue to be produced to [the Justice Management Division]—means that the Department must publicly produce responsive documents on a rolling basis." *Id.* at 5.

The Attorney General made further productions on December 20, 22, and 23, 2025, and on January 30, 2026. Mot., ECF No. 9-1 at 14. No production was accompanied by a privilege log. *Id.*

On January 30, 2026, the Attorney General issued a second letter, stating that that day's production "mark[ed] the Department's compliance with its production obligations under the [Epstein] Act." Letter from Todd Blanche, Deputy U.S. Att'y Gen., Re: Epstein Files Transparency Act - Production of Department Materials at 1 (Jan. 30, 2026), Exhibit E to Ward-

Packard Decl., ECF No. 9-3 ("January 30, 2026 Letter"). The letter stated that "approximately 200,000 pages have been redacted or withheld based on various privileges" and that a "formal report with a summary of redactions made and list of all government officials and politically exposed persons named or referenced in the released materials will be submitted to the House and Senate Committees on the Judiciary within 15 days of today's release." *Id.* at 4. The letter stated that foreign language materials had not been reviewed or produced "[b]ecause it was not practicable for a first-level reviewer to determine the responsiveness of a foreign-language document." *Id.* at 5. The letter also stated that some documents were not produced because of technical issues with the files. *Id.* The letter concluded that "[a]fter submitting the formal report to Congress required under the [Epstein] Act and publishing the written justifications in the Federal Register, the Department's obligations under the [Epstein] Act will be completed." *Id.* at 6.

On February 2, 2026, the Attorney General acknowledged that "several thousands of documents and media that may [sic] have inadvertently included victim-identifying information" were disclosed in the January 30, 2026 production and were therefore subsequently removed. *See* Letter from Todd Blanche, Deputy U.S. Att'y Gen. to the Hon. Richard M. Berman & the Hon. Paul A.

Engelmayer, *United States v. Maxwell*, ECF No. 848, 1:20-cr-00330-PAE (S.D.N.Y. Feb. 2, 2026). Attorneys representing Mr. Epstein's victims informed the *Maxwell* court that the Attorney General's disclosure of victim-identifying information began with the December 20, 2025 production, that the impact to Mr. Epstein's victims from the disclosure had "escalated from concern to suffering and fear for personal safety," and that the harm was "irreversible." *United States v. Maxwell*, 20 Cr. 330, 2026 WL 279487, at *4, *5 (S.D.N.Y. Feb. 3, 2026). On April 23, 2026, the Department's Inspector General announced that it had initiated an audit of the Attorney General's compliance with the Epstein Act. U.S. DEPARTMENT OF JUSTICE, *DOJ OIG Announces Initiation of Audit* (April 23, 2026), https://oig.justice.gov/news/doj-oig-announces-initiation-audit.[2]

On February 14, 2026, the Attorney General issued the report required in section 3 of the Epstein Act in the form of a letter to the Chairmen and Ranking Members of the Senate Judiciary Committee and House Judiciary Committee. *See* Letter from Todd Blanche, Deputy U.S. Att'y Gen. to Chairman Chuck Grassley, Ranking Member Dick Durbin, Chairman Jim Jordan, Ranking Member Jamie Raskin (Feb. 14, 2026), Exhibit F to Ward-

[2] The Court may take judicial notice of information posted on official public websites of government agencies. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

Packard Decl., ECF No. 9-3. With regard to withheld records, the letter stated that "[t]he only category of records withheld were those records where permitted withholdings under section 2(c) and privileged materials were not segregable from material responsive under section 2(a)," and that "the privileges that applied to the withheld records were deliberative-process privilege, work-product privilege, and attorney-client privilege." *Id.* at 2. The letter stated that "[no] records were withheld or redacted 'on the basis of embarrassment, reputational harm, or political sensitivity, including to any government official, public figure, or foreign dignitary'" pursuant to section 2(b)(1) of the Epstein Act. *Id.*

The letter included a four-paragraph "Summary of Redactions Made and Legal Basis." *Id.* at 2-3. The first category in the summary was the withholdings permitted under section 2(c) of the Epstein Act. *Id.* at 2. For the second category, the letter stated that "[a]lthough permitted by [section 2(c)(1)(E) of] the [Epstein] Act, no materials were redacted or withheld on th[e] basis that a record 'contain[ed] information specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive order.'" *Id.* at 3. The third category were redactions based on "various privileges, including deliberative-process

privilege, work-product privilege, and attorney-client privilege." *Id.* The letter cited Supreme Court precedent for these withholdings. *Id.*

The letter concluded with a "List of All Government Officials and Politically Exposed Persons" named or referenced in the released materials. *Id.* at 3-6.

### 3. Plaintiff Katie Phang

Plaintiff Katie Phang is an "attorney and independent journalist based in Miami, Florida." Mot., ECF No. 9-1 at 15; *see also* Phang Decl., ECF No. 9-2 ¶ 2. She has worked as a legal analyst for a variety of media outlets, including hosting "The Katie Phang Show" on MSNOW (then MSNBC). Phang Decl., ECF No. 9-2 ¶¶ 5, 6. Since April 2025, she has reported on "major domestic and international events, with a focus on legal and political news" on her YouTube channel and other platforms. *Id.* ¶ 7. She has "extensively covered the crimes of Jeffrey Epstein, Ghislaine Maxwell, and others in the 'Epstein elite,'" including publishing seventy-two videos about the subject in the last year. *Id.* ¶¶ 8, 9. Her reporting on the Epstein files has "realized more than 9.7 million views on [her] YouTube channel." *Id.* ¶ 10.

To conduct her reporting, Ms. Phang has "personally reviewed many of the documents produced . . . pursuant to the [Epstein Act]," and she has "relied and continue[s] to rely on

materials disclosed under the [Epstein] Act to develop [her] reporting and to prepare and execute [her] reporting." *Id.* ¶ 12. Ms. Phang argues that "[the Attorney General's] violations of the [Epstein] Act have interfered with [her] ability to perform [her] job as an investigative journalist." *Id.* ¶ 13. Specifically, the relief she seeks in her motion are "particularly time-sensitive[] because they are preventing [her] from moving forward with reporting [she] would otherwise conduct over the coming weeks and months." *Id.* ¶ 14.

Ms. Phang seeks the information that she claims has been illegally withheld "because, as a journalist covering the Epstein story, [she owes her] audience, the public, and the victims of Epstein, Maxwell, and others the most accurate and comprehensive reporting possible." *Id.* ¶¶ 32, 33. "[The Attorney General's] illegal conduct has injured and continues to injure [her] by preventing [her] from conducting the comprehensive reporting [she] would otherwise conduct" about the specific information she seeks to obtain through her motion. *Id.* ¶ 34. Additionally, she states that "[the Attorney General's] illegal conduct has [] caused and continues to cause [her] to suffer direct financial losses," by "constraining [her] ability to report" on the Epstein files. *Id.* ¶¶ 35, 42.

**B. Procedural Background**

Ms. Phang filed the Complaint on April 27, 2026, alleging four claims: (1) Violation of the Administrative Procedure Act - Contrary to Law and in Excess of Statutory Authority; (2) Violation of the Administrative Procedure Act - Arbitrary, Capricious, and an Abuse of Agency Discretion; (3) Ultra Vires Agency Action;[3] and (4) Declaratory Judgment Act. *See* Compl., ECF No. 1 at 12-14. She asks the Court to provide the following relief: (1) declare that the Attorney General has failed to comply with the Act; (2) enjoin the Attorney General's ongoing violations of the Epstein Act and require him to: (a) remove all unlawful redactions, (b) explain the bases for any remaining lawful redactions, (c) re-produce all materials that were produced but unlawfully redacted, and (d) produce all materials that have not been produced but should be; (3) appoint a special master to oversee the Attorney General's compliance with the law; (4) award attorneys' fees and costs; and (5) grant any other relief the Court deems just and proper. *Id.* at 14–15.

On May 28, 2026, Ms. Phang filed a motion for preliminary injunction, seeking relief for a specific list of violations of

[3] The Court does not address Ms. Phang's likelihood of success on her *ultra vires* claim in this Memorandum Opinion because she does not invoke *ultra vires* in the pending motion.

the Epstein Act and requesting that the Court enter an order requiring the Attorney General to:

> (1) show cause why the redactions of sender and recipient names in the emails bearing Bates numbers EFTA00749245, EFTA01187999, EFTA01930501, ETFA01928255, EFTA00628112, EFTA02648868, EFTA02504630, and EFTA01022356 should not be removed;
>
> (2) show cause why the redactions of potential co-conspirator names in the DOJ documents bearing Bates numbers EFTA01703108 and EFTA00038227 should not be removed;
>
> (3) show cause why the underlying FBI interview notes that formed the basis for the FD-302 interview reports bearing Bates numbers EFTA01245620, EFTA02858481, EFTA02858491, and EFTA02858495 should not be produced (with appropriate redactions to protect victims' information);
>
> (4) immediately initiate review and production of foreign-language materials that may be subject to production under the Epstein Files Transparency Act; and
>
> (5) immediately publish in the Federal Register the redaction log required under Epstein Files Transparency Act § 2(C)(2), and update it concurrently with each future release of redacted materials.

Mot., ECF No. 9-1 at 35-36. The Attorney General filed his opposition to the motion on June 5, 2026, *see* Opp'n, ECF No. 12; and Ms. Phang filed her reply on June 8, 2026. *See* Reply, ECF No. 13. The motion is ripe and ready for the Court's adjudication.

## II. Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right," and only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council Inc.*, 555 U.S. 7, 22, 24 (2008). The moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. "[T]he first and most important factor" is likelihood of success on the merits. *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Where the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

In this Circuit, the four factors have typically been evaluated on a "sliding scale," such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). In the wake of the Supreme Court's decision in *Winter*, 555 U.S. at 7; "the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." *Holmes v. FEC*, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014); *see also Sherley v. Sebelius*, 644

F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, freestanding requirement for a preliminary injunction." (quotation marks omitted)). Nonetheless, "the Circuit has had no occasion to decide this question because it has not yet encountered a post-*Winter* case where a preliminary injunction motion survived the less rigorous sliding-scale analysis." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014); *see also Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) ("In the past, we have . . . reserved the question whether the sliding-scale approach remains valid. We follow the same approach here because, even under the sliding-scale approach, the movant must raise at least a serious legal question on the merits." (internal quotations and citations omitted)); *cf. Hanson v. District of Columbia*, 120 F.4th 223, 243 (D.C. Cir. 2024) (citations omitted).

For the reasons explained below, all factors weigh in Ms. Phang's favor.

## III. Analysis

### A. The Court Likely Has Jurisdiction Over Ms. Phang's Claims

The Attorney General argues that the Court lacks jurisdiction over Ms. Phang's claims because: (1) the Epstein Act does not provide for a private right of action; (2) Ms.

Phang lacks Article III standing; and (3) the Administrative Procedure Act's ("APA")[4] waiver of sovereign immunity does not apply here because Ms. Phang has an adequate remedy under the Freedom of Information Act ("FOIA")[5]. Opp'n, ECF No. 12 at 15. For the reasons explained below, each of the Attorney General's arguments is without merit.

**1. The APA Provides Ms. Phang With a Right of Action**

The Attorney General argues that "[b]y its own terms, nowhere does [the Epstein Act] expressly authorize private individuals to sue for alleged violations, nor does the statutory scheme indicate that Congress intended to create an implied right of action," and therefore "any claim premised on an alleged violation of the Epstein Act fails as a matter of law." Opp'n, ECF No. 12 at 16–17.

However, Ms. Phang sues under the APA, not under the Epstein Act. "The APA, by its terms, provides a right to judicial review of all final agency action for which there is no other adequate remedy in a court, § 704, and applies universally except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law, § 701(a)." *Bennett v. Spear*, 520 U.S. 154, 175 (1997) (citation

[4] 5 U.S.C. § 706(2).
[5] 5 U.S.C. § 552.

modified). The Attorney General has conceded that the production of documents was final agency action. Opp'n, ECF No. 12 at 23.

Ms. Phang alleges that the Attorney General's violations of the Act are "not in accordance with law" pursuant to 5 U.S.C. § 706(2)(A) because they are contrary to the requirements of the Epstein Act. Compl., ECF No. 1 ¶¶ 48-51. Ms. Phang also alleges that the Attorney General's violations of the Act are arbitrary and capricious under 5 U.S.C. § 706(2)(A) because the Attorney General's production of materials "lacks a lawful basis and because [the Attorney General] has not articulated an adequate, reasoned, or lawful basis for redacting documents in whole or in part, retracting documents, and failing to produce others." *Id.* ¶¶ 52-55. For all these reasons, the Court rejects the Attorney General's argument that Ms. Phang's claims fail because the Epstein Act does not provide a private right of action. Ms. Phang has a right of action under the APA.

**2. Ms. Phang Likely Has Article III Standing**

**a. Legal Standard**

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. CONST. art. III, § 2). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *see Lujan v. Nat'l Wildlife Fed'n*, 504 U.S. 555, 560 (1990) (calling standing "the irreducible constitutional minimum"); *see also Jibril v. Mayorkas*, No. 19-cv-2457, 2023 WL 2240271, at *4 (D.D.C. Feb. 27, 2023) ("One way a court might lack subject-matter jurisdiction is if a plaintiff lacks Article III standing." (citing *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987))).

To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 573 U.S. at 157-58 (alteration in original) (quoting *Lujan*, 504 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

Courts have recognized that plaintiffs can establish standing based on an informational injury. *See Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011). And an "actual economic loss" is "a classic form of concrete and particularized harm" that suffices by itself to ground Article III standing. *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 9 (D.C. Cir. 2015).

**b. Analysis**

Ms. Phang argues that she has two redressable injuries: first, she has suffered cognizable informational injuries, *see* Mot., ECF No. 9-1 at 18–21; and second, she has suffered cognizable economic injuries. *Id.* at 21. The Attorney General responds that Ms. Phang is not suffering a cognizable informational injury, and that her economic injury is not redressable. *See* Opp'n, ECF No. 12 at 18–19. For the reasons explained below, the Court concludes that Ms. Phang likely suffers from informational injuries and her economic injury Likely is redressable.

**i. Ms. Phang Likely Has Suffered a Cognizable Informational Injury**

It is well-settled that "a denial of access to information qualifies as an injury in fact where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the

information would help them." *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 783 (D.C. Cir. 2022). To demonstrate that they have an actionable informational injury, a plaintiff must show that: "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (citing *FEC v. Akins*, 524 U.S. 11, 21-22 (1998)).

"[T]he fact that a number of people could be similarly injured does not render the claim an impermissible generalized grievance[.]" *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007). And "[t]he fact that other citizens or groups of citizens" are also deprived of the information a plaintiff seeks "does not lessen [a plaintiff's] asserted injury, any more than the fact that numerous citizens might request the same information under the [FOIA] entails that those who have been denied access do not possess a sufficient basis to sue." *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449-50 (1989). Even if the statute "entitles the public generally to the disclosure of" the information, "that does not mean that the informational injury . . . is not particular to Plaintiff." *Elec. Priv. Info. Ctr. v.*

*Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017).

Ms. Phang argues that she satisfies the first part of the test because she "reads the statute to require a host of disclosures that have not occurred" and because disclosure is owed to the "public at large." Mot., ECF No. 9-1 at 19 (quoting *Citizens for Resp. & Ethics in Wash. v. Off. of Mgmt. & Budget*, 791 F. Supp. 3d 29, 46 (D.D.C. 2025)). The Attorney General disagrees, arguing that: (1) Ms. Phang does not "allege any harm or individualized interests separate from 'the interests of the public at large,'" Opp'n, ECF No. 12 at 17 (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 600 (2007)); (2) she does not have a "personal 'statutory right to seek the information' at issue," *id.* at 18 (quoting *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 686 (D.C. Cir. 2023)); and (3) because the statute is directed at the government, she has no legally protected interest to assert. *Id.* (citing *Ctr. for Biological Diversity*, 77. F.4th at 686).

The Attorney General's arguments are unpersuasive. As to his first argument, his reliance on *Hein* is inapposite since it is not an informational injury case.

As to his second and third arguments, *Center for Biological Diversity* supports Ms. Phang's argument rather than his. There, plaintiffs sued the U.S. International Development Finance

Corporation ("DFC") under the APA and the Sunshine Act, a statute directed at the government, after the DFC published a rule exempting itself from the Sunshine Act. "Congress enacted the Sunshine Act to open the deliberations of multi-member federal agencies to public view." *Common Cause v. Nuclear Reg. Comm'n,* 674 F.2d 921, 928 (D.C. Cir. 1982). It requires, among other things, a public announcement of meetings and logistical information about them, and the right to a transcript, recording, or minutes of any closed portion of a meeting. *Cnt. for Biological Diversity*, 77 F.4th at 686. The court held that Center for Biological Diversity ("CBD") had informational standing with regard to the first part of the test, because "[o]n its interpretation of the Sunshine Act, CBD claims that it was denied notice about certain meetings, preventing it from attending and engaging with DFC." *Id.* The court explained that "[g]iven Congress's clear command for any agency subject to the Sunshine Act to provide robust public information, there can be no doubt that these provisions create a right to information sufficient for [the plaintiff's] injury." *Id.* As this Court has explained, "[e]ven if the statute 'entitles the public generally to the disclosure of' the information [from the government], 'that does not mean that the informational injury ... is not particular to Plaintiff.'" *Citizens for Resp. & Ethics in Wash.*, 791 F. Supp. 3d at 46 (citing *Elec. Priv. Info. Ctr.*, 266 F.

Supp. 3d at 311). The Epstein Act requires "robust" disclosure of information by the government to the public.

The Court concludes that Ms. Phang satisfies the first part of the test: on her interpretation of the Epstein Act, it requires the information to be disclosed to her as part of the public at large, and the Attorney General's alleged failure to comply with the law deprives her of this information. *See e.g.*, *Akins*, 524 U.S. at 20–25 (emphasizing that an "inability to obtain information" that Congress required to make public constitutes an injury in fact for Article III).

Ms. Phang argues that she satisfies the second part of the test because she is suffering the type of harm that Congress sought to prevent in enacting the Act. Ms. Phang argues first that "Congress enacted the Act to provide 'complete truth' for survivors;" Mot., ECF No. 9-1 at 19 (quoting 171 Cong. Rec. H4726 (daily ed. Nov. 18, 2025) (statement of Rep. Raskin)); and to "achieve 'maximum possible level of transparency when it comes to the heinous crimes of Jeffrey Epstein.'" *Id.* (quoting 171 Cong. Rec. H4727 (daily ed. Nov. 18, 2025) (statement of Rep. Kiley)); *see also id.* at 19 n.7 (listing more statements from congressional representatives noting the purpose of the Act is transparency for the American public). Ms. Phang then argues that to realize these goals, journalists "through their

reporting are able to mediate the contents of the Epstein Files for the general public." *Id.* at 20.

The Attorney General disagrees, arguing that Ms. Phang cannot demonstrate "downstream harm—some concrete consequences of not receiving the information," but that "[a]t best, [Ms. Phang] asserts generalized grievances of seeking 'complete truth' and 'transparency.'" Opp'n, ECF No. 12 at 18-19.

The Attorney General's arguments are unpersuasive. First, Ms. Phang *has* identified "some concrete consequences of not receiving the information." *Id.* at 18. She has identified "half a dozen stories she is currently unable to report" because the Attorney General has not disclosed the information. *See* Reply, ECF No. 13 at 8-9 (citing Phang Decl., ECF No. 9-2 ¶¶ 14-31). She has identified harms to victims and the public who are being denied the benefit of her reporting. Mot., ECF No. 9-1 at 20. She also cited authority that supports her assertion that journalists, and herself in particular, have suffered the type of harm that the Epstein Act was meant to prevent. *See* Mot., ECF No. 9-1 at 20-21 (citing *Seife v. U.S. Dep't of Health & Human Servs.*, 440 F. Supp. 254 (S.D.N.Y. 2020) and *Pub. Citizen v. Carlin*, 2 F. Supp. 2d 1 (D.D.C. 1997), *rev'd on other grounds*, 184 F.3d 900 (D.C. Cir. 1999)). The Attorney General does not address this authority. *See generally* Opp'n, ECF No. 12 at 18. Second, "the fact that a number of people could be similarly

injured does not render the claim an impermissible generalized grievance: 'where a harm is concrete, though widely shared, the Court has found injury in fact.'" *Pub. Citizen, Inc.*, 489 F.3d at 1292 (quoting *Akins*, 524 U.S. at 24).

The Court concludes that Ms. Phang satisfies the second part of the test: she is suffering the type of harm—lack of transparency—that Congress sought to prevent by requiring disclosure of the information and the disclosure of the information that Ms. Phang seeks would help her in her work. *See e.g.*, *Jewell*, 828 F.3d at 992 ("[T]he existence and scope of an injury for informational standing purposes is defined by Congress: a plaintiff seeking to demonstrate that it has informational standing, generally 'need not allege any *additional* harm beyond the one Congress identified.'" (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 342 (2016))).

For all these reasons, Ms. Phang has established that she likely is suffering from an informational injury.

**ii. Ms. Phang's Economic Injuries Are Likely Redressable**

Ms. Phang also argues that she has suffered an economic injury based on the Attorney General's failure to disclose materials in violation of the Epstein Act, which has caused her "actual economic loss" because she has been unable to publish additional videos about the Epstein files and consequently has

lost revenue. Mot., ECF No. 9-1 at 21. An "actual economic loss" is "a classic form of concrete and particularized harm" that suffices by itself to ground Article III standing. *Humane Soc'y of the U.S.*, 797 F.3d at 9. The Attorney General responds that any alleged economic "injury cannot establish standing because it is not redressable" since "monetary relief is not available under the APA." Opp'n, ECF No. 12 at 19 (citing 5 U.S.C. § 702).

The Attorney General's argument is without merit. "A 'plaintiff satisfies the redressability requirement' by showing 'that a favorable decision will relieve a discrete injury' to the plaintiff," and "[t]he plaintiff 'need not show that a favorable decision will relieve' his or her '*every* injury.'" *Energy Future Coal. v. E.P.A.*, 793 F.3d 141, 145–46 (D.C. Cir. 2015) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 525 (2007)) (emphasis in original). Rather, the plaintiff needs to show that her injury would be redressed by removing a "hurdle." *Id.* at 144.

Ms. Phang is not seeking monetary damages. *See generally* Compl., ECF No. 1. Rather, she is requesting that the "hurdle"—the violations of the Act—be removed so she can continue to publish her work and so she does not experience further economic loss caused by the hurdle. Accordingly, her economy injury is redressable by the relief she requests.

**iii. Ms. Phang Likely Has Established the Requisite Causal Connection, and Her Informational Injury Likely Is Redressable**

The Attorney General does not contest causal connection, which is easily met here. *See generally* Opp'n, ECF No. 12. Ms. Phang's injuries are directly traceable to her claims that the Attorney General has violated the Epstein Act. The Attorney General also does not dispute that Ms. Phang's informational injuries are redressable by the relief she is seeking. *See generally id.* A favorable ruling by the Court would resolve her informational injuries, as she would be able to obtain and report on the information she is seeking.

For all the reasons discussed above, the Court concludes that Ms. Phang has established Article III standing.

**3. FOIA Does Not Provide an Adequate Remedy**

The Attorney General argues that Ms. Phang invoked the APA's waiver of sovereign immunity when she brought this action under the APA, but because FOIA provides Ms. Phang with another adequate remedy, there was no waiver of sovereign immunity and so the Court lacks jurisdiction over her claims. *See* Opp'n, ECF No. 12 at 19–21.

For a remedy to constitute an adequate remedy precluding APA review, the remedy must not be "doubtful." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. DHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). The disclosure mandate in the Epstein Act is

"strikingly broad." *United States v. Maxwell*, 811 F. Supp. 3d 667, 676 (S.D.N.Y. 2025). The Court concludes that FOIA, a fundamentally different disclosure law, does not provide Ms. Phang with an adequate remedy for the reasons explained below.

First, Ms. Phang likely would not be able to obtain the unredacted names of senders and recipients in email exchanges with Mr. Epstein because such information would likely be redacted under FOIA Exemption 6—information that, if disclosed, would invade another individual's personal privacy; and FOIA Exemption 7—information compiled for law enforcement purposes. *See Clemente v. Fed. Bureau of Investigation*, No. 1:20-cv-1527, 2022 WL 17092585, at *3–9 (D.D.C. Nov. 21, 2022) (holding that the FBI properly asserted Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E) for records withheld in response to a broad FOIA request for records related to Mr. Epstein and his alleged criminal activities). Second, she would not be able to obtain unredacted DOJ internal charging documents or the notes of the interview with the person who accused Mr. Trump of assault because they would likely be subject to the same exemptions, as well as potentially being exempted as grand jury records under 5 U.S.C. § 552(b)(3) and Federal Rule of Criminal Procedure 6(e). *See id*. Third, she likely would not be able to compel the review of foreign-language documents because such a request likely would be denied as "unduly burdensome." FOIA "protects agencies

from undue burdens." *Inst. for Just. v. IRS*, 941 F.3d 567, 570 (D.C. Cir. 2019). The Attorney General stated that foreign language materials were not reviewed or produced because it was "not practicable for a first-level reviewer to determine the responsiveness of a foreign-language document," January 30, 2026 Letter at 5; and provided no indication that there was any plan to review and produce them. *Id.* And fourth, she would not be able to obtain the redaction log because FOIA does not require agencies "to create new records" that do not yet exist. *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 409 (D.C. Cir. 2020).

The Department's own post-Epstein Act responses to FOIA requests for the Mr. Epstein and Ms. Maxwell files refute the Attorney General's argument that FOIA provides an adequate remedy. In responses to two FOIA requests for the files, the Department stated that "the [Epstein Act] directed a much broader and less redacted release of the files than would have been made under the FOIA. Certain exemptions which may have been made under FOIA were not made in the [Epstein Act] release." Letter from Andrew D. Fiorillo, Chief, Initial Request Staff, U.S. Dep't of Just. Off. of Info. Pol'y, to Joseph Elfelt at 2 (Apr. 23, 2026), Exhibit H to Ballou Decl., ECF No. 14-1; Letter from Andrew D. Fiorillo, Chief, Initial Request Staff, U.S.

Dep't of Just. Off. of Info. Pol'y, to Joseph Elfelt at 2 (May 8, 2026), Exhibit I to Ballou Decl., ECF No. 14-1.[6]

The Attorney General relies on a string cite to assert that FOIA provides an adequate remedy here. Opp'n, ECF No. 12 at 20-21. But the Attorney General does not even attempt to explain why the cases cited are analogous to this case, where the Epstein Act mandates broad disclosures that would be exempted under FOIA and requires the publication of a redaction log that the Attorney General has not yet published.

The Attorney General argues that the Epstein Act and FOIA "must be construed as a whole and, indeed, they operate in harmony." Opp'n, ECF No. 12 at 22. But he provides no authority for these propositions. He contends that the Epstein Act "supplements FOIA by imposing additional disclosure obligations with respect to a specific set of records; it does not supplant FOIA or create a parallel enforcement framework." *Id.* He provides no authority for these propositions either. The Epstein Act is a standalone piece of legislation. It does not reference

[6] Ms. Phang filed a Notice of Supplemental Materials ("Notice") containing the Ballou Declaration and the letters responding to the FOIA requests at 6:45 pm on June 24, 2026. *See* Notice of Suppl. Materials, ECF No. 14. The next morning, the Court posted a Minute Order directing the government to file a response to the Notice by no later than 1:00 pm the same day—June 25, 2026. The Attorney General neither filed a response nor requested additional time to respond as of the posting of this Memorandum Opinion.

FOIA or modify the FOIA provisions of the United States Code. When enacting the Epstein Act, Congress was well aware of FOIA and its requirements, "thereby indicating that [it] did not view the alternatives [to the same information] as adequate." *Citizens for Resp. & Ethics in Wash.* 791 F. Supp. 3d at 51 (discussing that FOIA requests were not an adequate source for the information sought by the plaintiff, as the plaintiff sought to enforce the disclosure statute at issue through the APA).

The Attorney General asserts that since Ms. Phang "alleges that the Department's public disclosures violated the law by failing to produce required records, improperly withholding information, and neglecting to provide adequate justification for any redactions applied," which is similar to what a plaintiff would contest under FOIA, "FOIA's remedial scheme is not merely adequate, but is substantively identical to the relief Plaintiff seeks." Opp'n, ECF No. 12 at 22. The Attorney General cites *Citizens for Responsibility and Ethics in Washington ("CREW") v. Dep't of Just.* to support this argument. 846 F.3d 1235, 1245-46 (D.C. Cir. 2017). CREW sued under section 704 of the APA to compel the Department of Justice's Office of Legal Counsel to disclose its opinions under the "reading-room" provision of the FOIA. *Id.* at 1238. That provision "requires agencies to 'make [certain records] available for public inspection in an electronic format[,]' including 'statements of

policy and interpretations which have been adopted by the agency and are not published in the Federal Register.'" *Id.* at 1240 (quoting 5 U.S.C. §§ 552(a)(2), (a)(2)(B)). FOIA provides for judicial review of an agency's decision to withhold records under this provision. *Id.* The court held that that FOIA offered an adequate remedy to CREW because "a plaintiff in CREW's position may bring a FOIA claim to enforce the reading-room provision" and therefore, CREW's APA claim was barred. *Id.* at 1246. The Attorney General's reliance on this case is misplaced since, as explained above, it is doubtful that Ms. Phang could obtain the information she seeks here with a FOIA claim. And FOIA's remedial scheme is clearly not "substantively identical" to the relief sought here for the reasons explained above.

The Attorney General also points to the Department's "Cross Walk" that correlates the exemptions under the Epstein Act to FOIA exemptions. Opp'n, ECF No. 12 at 22 (citing Department of Justice, Off. Of Info. Pol'y, EFTA-FOIA Crosswalk (2026), https://www.justice.gov/oip/media/1438931/dl?inline.[7] The Attorney General argues that "the redactions and withholding decisions [Ms. Phang] challenges align with FOIA's exemption framework." *Id.* at 22. What the Cross Walk in fact shows is that

[7] The Court may take judicial notice of information posted on official public websites of government agencies. *See Cannon*, 717 F.3d at 205 n.2.

the five very specific permitted grounds for withholding under the Epstein Act simply correlate to certain broader FOIA exemptions. There is nothing in the Epstein Act that required the Attorney General to create the Cross Walk, and the Attorney General ignores the fact that the Epstein Act requires disclosures that would be exempt under FOIA, as explained above.

For all these reasons, it is highly "doubtful" that FOIA would provide an adequate remedy. Therefore, Ms. Phang's suit under the APA is proper and is not barred by sovereign immunity.

### B. Ms. Phang Is Likely to Prevail on Her Administrative Procedure Act Claims Relevant to the Pending Motion

Ms. Phang argues that she is likely to succeed on the merits of her APA claims relevant to the instant motion. Mot., ECF No. 9-1 at 23-26. Ms. Phang identifies five categories of violations of the Epstein Act. First, the Attorney General has violated the Epstein Act by redacting the names of senders and recipients in at least eight email exchanges with Mr. Epstein regarding a "torture video" and sexual activity with young women, including minors. *Id.* at 23-26. Second, the Attorney General has violated the Epstein Act by redacting the names of co-defendants in a draft indictment, the names of individuals identified as "co-conspirators," and the sender and recipients in a Department briefing email. *Id.* at 26. Third, the Attorney General has violated the Epstein Act by withholding certain

materials mentioning President Trump, specifically, "notes from FBI interviews with a victim who has alleged that in the 1980s, when she was about 13 years old, Epstein introduced her to Trump, who in turn assaulted her." *Id.* at 27. Fourth, the Attorney General has violated the Epstein Act by not reviewing or producing any foreign language materials. *Id.* at 28-30. Fifth, the Attorney General has violated the Epstein Act by failing to publish any redaction logs. *Id.* at 30-31.

The Attorney General does not respond substantively to any of these arguments. Rather, he states that based on his jurisdictional arguments, "[Ms. Phang's] APA claims fail as a matter of law." *Id.* at 14. By not responding substantively, the Attorney General has conceded Ms. Phang's merits arguments in the pending motion. *Texas v. United States,* 798 F.3d 1108, 1110 (D.C. Cir. 2015) (stating that D.D.C. Local Rule 7(b) is "understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded"). Accordingly, Ms. Phang is likely to succeed on the merits of her APA claims relevant to the pending motion.

### C. Ms. Phang Likely Has Established That She Faces Irreparable Harm

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm;" thus "[a] movant's failure to

show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

The D.C. Circuit "has set a high standard for irreparable injury." *Id.* "First, the injury must be both certain and great; it must be actual and not theoretical." *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). The movant must show that "[t]he injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (internal citations, brackets, and quotation marks omitted). "Second, the injury must be beyond remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

Ms. Phang argues that she "is suffering two kinds of irreparable harm: an informational harm (because Blanche refuses to produce time-sensitive information she is entitled to) and an economic harm (because she cannot publish time-sensitive reporting based on that information)." Reply, ECF No. 13 at 14-15; Mot., ECF No. 9-1 at 18-21, 32-34. The Attorney General argues that her purported information injury is speculative and conjectural, Opp'n, ECF No. 12 at 26-27; and that her economic injury alone does not constitute irreparable harm. *Id.* at 27-28.

The Court concludes that Ms. Phang has demonstrated irreparable injury for the reasons explained below.

#### 1. Ms. Phang's Informational Injury Is Neither Speculative Nor Conjectural

Ms. Phang argues that the information she seeks is time-sensitive because Congress has said so by requiring compliance with the Epstein Act within thirty days of its enactment. Mot., ECF No. 9-1 at 31. Ms. Phang argues that the information is time-sensitive "in fact" because if she is able to report on the names of the co-conspirators whose names have been redacted, judicial redress for victims may be possible. *Id.* at 32. Ms. Phang argues that the foreign language materials "are likely to be a fruitful source of information about the identities of those complicit in Epstein's crimes." *Id.* Ms. Phang argues that materials related to President Trump are particularly time-sensitive "because of the ongoing midterm elections" and the fact that "[m]any candidates have highlighted the Epstein Files as part of their campaigns." *Id.* Finally, Ms. Phang argues that the "redaction log is time-sensitive as a structural matter" because without it, there is "no systematic way to evaluate the productions that have occurred to date." *Id.* at 34.

The Attorney General argues that Ms. Phang has not provided adequate evidence "that any records are presently at risk of destruction, that any relevant evidence is likely to be lost

during the pendency of this litigation, or that any witness possesses information that is in imminent danger of becoming unavailable." Opp'n, ECF No. 12 at 26.[8] This argument is beside the point. Ms. Phang does not argue that *she* faces irreparable harm because the records are at risk of destruction, that evidence will be lost during the litigation, or that a witness possesses information that is in imminent danger of becoming unavailable; rather she points out that these are concerns with any potential judicial redress for victims. The Attorney General also argues that the fact that many of the "records at issue concern alleged events that occurred decades ago" undermines her "claim of urgency." Opp'n, ECF No. 12 at 18. However, the urgency is based on the fact that the Epstein Act required disclosure within 30 days of enactment; not based on when the underlying events occurred.

Finally, the Attorney General argues that Ms. Phang's argument regarding public interest fading after the upcoming mid-term elections is speculative. *Id.* However, "the non-disclosure of information to which a plaintiff is entitled, under certain circumstances itself constitutes an irreparable

---

[8] The Attorney General also argues that injury from delay in obtaining these materials is speculative because Ms. Phang only states that delay "may impair" the search for truth. Opp'n, ECF No. 12 at 26 (citing Mot., ECF No. 9-1 at 32.) The Attorney General has taken this reference out of context and so the Court does not address the argument.

harm; specifically, where the information is highly relevant to an ongoing and highly public matter." *Elec. Priv. Info. Ctr.*, 266 F. Supp. 3d at 319. One example of such a circumstance is when a plaintiff was "precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance Program." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006). Another example was "because the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment." *Washington Post v.*DHS, 459 F. Supp. 2d 61, 75 (D.D.C. 2006). Here, the current high level of interest in the Epstein Files combined with the upcoming mid-term elections amounts to a circumstance that itself constitutes irreparable harm, especially where the Attorney General has not disputed that he is in violation of the Epstein Act.

**2. Ms. Phang's Economic Injury Likely Is Irreparable**

Ms. Phang argues that the information she seeks is time-sensitive to her business interests because she "derives income from each video and story she publishes," and to maximize her

revenue, her reporting needs to be "about topics that are timely and newsworthy." Mot., ECF No. 9-1 at 34. She notes that public interest in the Epstein files is "extraordinarily high" now but will diminish over time. *Id.*

As an initial matter, the Attorney General's contention that "economic loss does not, in and of itself, constitute irreparable harm" misunderstands the applicable law. Opp'n, ECF No. 13 at 16 (quoting *Wis. Gas Co.*, 758 F.2d at 674). Rather, where, as here, Ms. Phang cannot receive damages under the APA, economic harm can be considered irreparable. *See, e.g.*, *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) ("[B]ecause [plaintiff] will not be able to seek damages under the APA for any possibly unlawful agency action once the fund has fully expired the Court concludes that [plaintiff] is likely to suffer irreparable economic harm absent a temporary restraining order." (internal citations omitted)); *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) ("[I]f a movant seeking a preliminary injunction will be unable to sue to recover any monetary damages against a government agency in the future because of, among other things, sovereign immunity, financial loss can constitute irreparable injury." (internal quotations omitted)); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (although "economic harm is not generally considered irreparable . . .

where parties cannot typically recover monetary damages flowing from their injury—as is often the case in APA cases—economic harm can be considered irreparable").

The Attorney General argues that Ms. Phang has acknowledged that she "has continued to publish on her YouTube channel and has not been prevented from covering the Epstein matter generally." Opp'n, ECF No. 12 at 28. He also argues that the fact that "Plaintiff released an episode just two months ago that recorded over 315,000 views to date, and another three months ago that recorded over 841,000 views to date" has shown that the absence of these records "has not silenced her." *Id.* However, that Ms. Phang has continued to work does not mean that the economic harm is irreparable for the reasons explained above and because she would do additional reporting based on the information she seeks.

**3. Ms. Phang Did Not Delay Seeking Preliminary Injunctive Relief**

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). While "a late filing, on its own, is [not] a permissible basis for denying a preliminary injunction," "untimely filings may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong." *Gordon v. Holder*, 632 F.3d 722, 724-25 (D.C. Cir. 2011).

The Attorney General argues that Ms. Phang's "delay in seeking injunctive relief further undermines any claim of irreparable harm." Opp'n, ECF No. 12 at 28. He argues that she had the information that forms the basis of her claims in early February 2026 but did not file suit until April 27, 2026, and then did not file her motion for preliminary injunction until May 28, 2026. *Id.* at 29. Ms. Phang responds that there was no delay because the scope of the production meant that it "took weeks" to discover the gaps in the productions and that not having the redaction log complicated that task. Reply, ECF No. 13 at 17.

On January 30, 2026, the Department announced that as of that date, it had published approximately 3.5 million pages in response to the Epstein Act. U.S. DEPARTMENT OF JUSTICE, *Department of Justice Publishes 3.5 Million Responsive Pages in Compliance with the Epstein Files Transparency Act* (Jan. 30, 2026), https://www.justice.gov/opa/pr/department-justice-publishes-35-million-responsive-pages-compliance-epstein-files.[9] Ms. Phang states that she "promptly filed this lawsuit after discovering and confirming the scope of [the Attorney General's] noncompliance, but she delayed motion practice in the hope that

[9] The Court may take judicial notice of information posted on official public websites of government agencies. *See Cannon*, 717 F.3d at 205 n.2.

DOJ would quickly cure its most blatant errors (or at least negotiate over them). But a month into the case, the government had not . . . entered a notice of appearance" and so she filed the motion. Reply, ECF No. 13 at 17. Ms. Phang filed suit approximately four months after the Attorney General completed the disclosure of 3.5 million pages of documents, and she filed the pending motion approximately one month later. In view of the volume of documents and the failure of the Attorney General to publish the redaction log, Ms. Phang's conduct does not constitute delay.

### D. The Balance of the Equities and the Public Interest Favor an Injunction

"A party seeking a preliminary injunction must show that 'the balance of equities favors preliminary relief' and that 'an injunction is in the public interest.'" *Hanson*, 120 F.4th at 246 (quoting *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022)). The Court "must carefully balance the equities by weighing the harm to the moving party and the public if there is no injunction against the harm to the government and the public if there is." *Id.* The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

Ms. Phang argues that because "[t]here is generally no public interest in the perpetuation of unlawful agency action,"

Mot., ECF No. 9-1 at 34 (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)); granting the relief she seeks is in the public interest. *Id.* She also argues that granting relief is in the public interest because it is the first step towards the "reckoning for America" that the Epstein Act was meant to bring about. *See* Mot., ECF No. 9-1 at 35. The Attorney General agrees that "there is public interest in transparency and the disclosure of the information concerning [Mr.] Epstein" but argues that the public interest is "not served by compelling the Department to redirect personnel and resources away from competing public interest and safety priorities to address [Ms. Phang's] preference for expedited treatment." Opp'n, ECF No. 12 at 29.

However, "there is no competing harm to the government with the issuance of preliminary relief that orders compliance with . . . statutes and the Constitution, while '[t]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 40 (D.D.C. 2025) (citing *Newby*, 838 F.3d at 12 (internal citation omitted)). The Epstein Act requires the Attorney General to publicly disclose the documents that are covered by it; complying with the law does not harm the Attorney General. Moreover, Ms. Phang is not seeking "expedited treatment." Opp'n,

ECF No. 12 at 29. The Act required the production of the covered documents and the redaction log by December 19, 2025. The Attorney General conceded that he is in violation of the Act. *See generally id.* And Ms. Phang is not seeking full relief on the merits in the pending motion. For all these reasons, the Court concludes that the balance of the equities weighs in favor of entering a preliminary injunction.

**E. The Court Imposes a Nominal Bond on Ms. Phang**

The Federal Rules of Civil Procedure provide that "the court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Courts in this district have found this rule "vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond." *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). "[F]ederal courts typically require substantial bonds only in suits between private parties with significant monetary interests at stake." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 224 (D.D.C. 2025). "A bond 'is not necessary where requiring [one] would have the effect of denying the plaintiffs their right to judicial review of administrative action.'" *Nat'l Council of Nonprofits v. Off. of*

*Mgmt. & Budget*, No. 25-239, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) (quoting *Nat'l Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971)).

The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") recently clarified that injunction bonds are "generally required" under Rule 65(c). *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025) (per curiam). To ensure that the imposition of a bond does not "unduly burden [p]laintiffs, impair [the] ability to seek judicial relief, and chill access to justice," courts in this district "routinely require only nominal bonds from parties obtaining preliminary relief against the Government when the awarded relief will not impose an undue monetary burden on the enjoined parties." *Se. Fisheries Ass'n v. Lutnick*, Civil Action No. 26-1533, 2026 WL 1430499, at *13 (D.D.C. May 21, 2026).

The Court agrees that anything more than a nominal bond would prejudice Ms. Phang and potentially create a chilling effect on other public-law plaintiffs. *See* Reply, ECF No. 13 at 20. Furthermore, the Attorney General has not shown that if the Court grants preliminary relief the Department will incur any significant costs or damages. Therefore, the Court joins other judges in this district and imposes a nominal $1.00 bond. *See*,

*e.g.*, *Beatty v. Trump*, No. 25-cv-4480, 2026 WL 1505646, at *44 (D.D.C. May 29, 2026).

### F. The Court Will Not Issue a Stay

The Attorney General requests a stay of seven days to determine whether to seek emergency appellate review. Opp'n, ECF No. 12 at 30. The Attorney General also requests a stay of sixty days to determine whether further appellate review is warranted. *Id.* The Court will not issue a stay for the reasons stated in this Memorandum Opinion. The Attorney General has conceded that he is in violation of the Act. Ms. Phang is not requesting the immediate production of documents, but rather that the Attorney General show cause if he declines to do so. As to the requests to review of foreign language documents and publish the redaction log, the Act required the Attorney General to produce the documents and publish the log by December 19, 2025—more than six months ago.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Ms. Phang's Motion for Preliminary Injunction, ECF No. 9-1. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed: Emmet G. Sullivan**
**United States District Judge**
**June 25, 2026**

# Attachment B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATIE PHANG,<br><br>Plaintiff,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States,<br><br>Defendant. | Civil Action No. 26-1417 (EGS) |

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses the parties' responses to the Court's June 25, 2026 Preliminary Injunction Order in this matter.

## I. Procedural Background

### A. Plaintiff's Motion for Preliminary Injunction and the Court's Preliminary Injunction Order

On June 25, 2026, the Court granted Plaintiff's Motion for Preliminary Injunction and issued an accompanying Order. *See* *Phang v. Blanche*, Civil Action No. 26-1417, ___ F. Supp. 3d ___ (2026), 2026 WL 1831251 (D.D.C. 2026); Order, ECF No. 15.[1] Plaintiff sought relief for a limited list of apparent violations of the Epstein Files Transparency Act ("EFTA"). *See*

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

Appl. for Prelim. Inj., ECF No. 9; Mem. of Points and Auths. in Supp. of Appl. for a Prelim. Inj. (collectively "Mot."), ECF No. 9-1. Defendant did not respond substantively to Plaintiff's merits arguments, and in granting her motion, the Court largely adopted her proposed order, which Defendant did not address in his opposition to the Motion for Preliminary Injunction. *See generally* Opp'n, ECF No. 12. The Court ordered that by no later than July 2, 2026, the Defendant shall:

(1) either produce to the public the emails bearing Bates numbers EFTA00749245, EFTA01187999, EFTA01930501, ETFA01928255, EFTA00628112, EFTA02648868, EFTA02504630, and EFTA01022356 with sender and recipient names unredacted, or show cause why the redactions should not be removed;

(2) either produce to the public the DOJ documents bearing Bates numbers EFTA01703108 and EFTA00038227 with potential co-conspirator names unredacted, or show cause why the redactions should not be removed;

(3) either produce to the public the underlying FBI interview notes that formed the basis for the FD-302 interview reports bearing Bates numbers EFTA01245620, EFTA02858481, EFTA02858491, and EFTA02858495, with appropriate redactions to protect

victims' information, or show cause why the notes should not be produced;

(4) initiate review and production of foreign-language materials that may be subject to production under the EFTA, and provide notice to the Court and all parties that such review is underway; and

(5) either publish in the Federal Register the redaction log required under EFTA § 2(C)(2), and update it concurrently with each future release of redacted materials; or show cause why he cannot do so.

Order, ECF No. 15.

**B. The Parties' Responses**

Defendant filed his response on July 2, 2026, *see* Def.'s Resp. to Order to Show Cause ("Def.'s Resp."), ECF No. 19; Plaintiff filed her response on July 13, 2026, *see* Pl.'s Resp. to Court Order and Motion to Enforce ("Pl.'s Resp."), ECF No. 20; and Defendant filed his reply on July 20, 2026, *see* Def.'s Reply, ECF No. 22. The parties' respective responses are discussed below.

Regarding (1), Defendant states that the redacted information in six of the emails were the names of victims and that the redacted information in the remaining two emails were email addresses. *See* Def.'s Resp., ECF No. 19 at 10-12. Regarding the redaction of email addresses, Defendant stated

that email addresses were redacted pursuant to the Privacy Act as set forth in the EFTA First Level Review Protocol ("Review Protocol"). *Id.* at 11 (citing *EFTA First Level Review Protocol* at 8 (Jan. 4, 2026). In response, Plaintiff argues that to the extent Defendant contends that producing the email addresses would violate the Privacy Act, the EFTA "trumps" it because the EFTA was more recently enacted, but she provides no legal support for her position. *See* Pl.'s Resp., ECF No. 20 at 7.

Regarding (2), Defendant states that the redactions in the "from" and "to" email lines of EFTA00038227 are for law enforcement personnel, including both names and official email addresses. Def.'s Resp., ECF No. 19 at 12. Defendant cites the Review Protocol, which requires the redaction of the names of law enforcement personnel and their email addresses. *Id.* Defendant further states that three of the four names listed under the "co-conspirator" heading are victims. *Id.*

Defendant states that "EFTA01703108 is a draft indictment from the Southern District of Florida, bearing handwritten notation on page 1 stating 'OLD Draft'". *Id.* at 13. "The redactions appearing in this document were present in the original file; the Department has not been able to locate an unredacted version of this specific photocopy." *Id.* "The Department does, however, possess unredacted versions of substantially similar documents, including EFTA00194840, which

confirm that all of the redacted names are, once again, victims." *Id.* Plaintiff did not specifically respond to this explanation.

Regarding (3), Defendant states that he did not publish the underlying FBI interview notes that formed the basis for certain FD-302 reports for two reasons. First, they are "substantially similar to" and therefore duplicative of the typewritten reports. *Id.* at 14. Second, there is a risk of inadvertent disclosure of victim information because the notes are handwritten. *Id.* In response, Plaintiff argues that: (1) Defendant has neither argued nor provided any evidence in support of his contention that the specific handwritten notes are substantially similar; (2) the EFTA does not contain an exemption for documents that are "substantially similar"; and (3) the EFTA does not provide an exception for documents that are difficult to redact. Pl.'s Resp., ECF No. 20 at 6.

Regarding (4), Defendant states that the "Court should not supplant Congress's acceptance of [its] explanation" that it did not review any foreign language documents because "it was not practicable for a first-level reviewer to determine the responsiveness of a foreign language document." Def.'s Resp., ECF No. 19 at 14. Defendant provides no legal support for his position, stating only that "the Government continues to believe that the Court lacks the authority to" "supplant Congress's

acceptance of this explanation." *Id.* Plaintiff responds that "[w]hether Congress subsequently objected to [Defendant's] violation of the law is utterly irrelevant to whether the Attorney General must, in fact, follow the law." Pl.'s Resp., ECF No. 20 at 3. Defendant does not respond to these arguments in his Reply. *See generally* Reply, ECF No. 22.

Regarding (5), Defendant states that there is no deadline for submission of the redaction information and that "the notice for publication in the Federal Register" pursuant to section 2(c)(2) of the Act will be submitted. Def.'s Resp., ECF No. 19 at 15.

**C. The Court's *In Camera* Review Order, Status Hearing, Plaintiff's Proposed Order, and Defendant's and Plaintiff's Responses**

On July 25, 2026, the Court issued an order requiring Defendant to submit unredacted copies of certain documents for the Court's *in camera* review. *See* Order, ECF No. 23. The Court further required Defendant to provide documentation supporting Defendant's representation that the names that were redacted in the published version of the relevant documents are the names of victims and to provide documentation supporting Defendant's representation that the names in the "to" and "from" lines that were redacted in the published version of the relevant documents are the names of law enforcement personnel. Defendant timely

complied with the Court's order on July 30, 2026. *See* Notice of Compliance, ECF No. 25.

On August 6, 2026, the Court issued an order scheduling a status hearing for August 13, 2026 to address some, but not all, of the issues arising out of Defendant's responses to the Court's Preliminary Injunction Order and the Court's *in camera* review. *See* Order, ECF No. 29. Specifically, the Court stated that Defendant had not provided documentation to support his representation that certain names that were redacted in the published version of certain documents are the names of victims and directed Defendant to be prepared to discuss what documentation he will provide to support. *Id.* at 2. At the status hearing, Defendant submitted additional documents to the Court for its *in camera* review.

Regarding Defendant's explanation for why he did not publish (with appropriate redactions) the underlying FBI interview notes that formed the basis for certain FD-302 interview reports in response to the Court's Preliminary Injunction Order, the Court observed that Defendant did not point to a provision in the EFTA that contains an exception for "substantially similar" or duplicative documents, Def.'s Resp., ECF No. 19 at 13; and observed that Defendant has acknowledged publishing "substantially similar" draft indictments. *See id.* at 13. The Court ordered Defendant to be prepared to explain why

the handwritten notes cannot be redacted manually or why the redactions cannot be accomplished in another way. Rather than provide such an explanation at the status hearing, Defendant stated that the handwritten notes were not published because "the determination had been made that the handwritten notes were duplicative of materials that had already been produced." Hr'g Tr., ECF No. 34 at 6:22-24 (Aug. 13, 2026).

Finally, regarding the section 2(c)(2) provision of the EFTA requiring "[a]ll redactions [to] be accompanied by a written justification published in the Federal Register and submitted to Congress," the Court ordered Defendant to be prepared to discuss his timing for complying with this requirement. Order, ECF No. 29 at 3. Rather than being prepared to discuss such timing, counsel for Defendant stated that the only information he could provide was that the Federal Register publication is "forthcoming." Hr'g Tr., ECF No. 34 at 19:3-5 (Aug. 13, 2026). In response to Defendant's failure to provide the information the Court requested, Plaintiff's counsel suggested "an interim step," specifically that the Court "order a declaration that fully explains what steps are being taken, what information is going to be submitted, when it was going to be submitted." *Id.* at 25:7-10. At the conclusion of the status hearing, the Court directed Plaintiff's counsel to submit a proposed order for the Court's consideration. *Id.* at 34:8-10.

On August 20, 2026, Plaintiff submitted the proposed order. *See* Proposed Order, ECF No. 32. On August 27, 2026, Defendant responded to the proposed order claiming, among other things, that he had published the EFTA section 2(c)(2) written justification in the Federal Register that day. *See* Def.'s Resp. to Minute Order, ECF No. 37 at 1.

## II. Analysis of Defendant's Responses to the Court's Preliminary Injunction Order

### A. Eight E-mails With Redacted Names

The Court has reviewed the documents Defendant submitted to the Court at the August 13, 2026 status hearing. The Court finds that Defendant has provided adequate documentation to support his representation that names of victims were redacted in the following documents: (1) EFTA01930501; (2) ETFA01928255; and (3) EFTA02648868. Accordingly, the Order to Show Cause as to these documents will be **DISCHARGED.**

Defendant has not, however, provided any documentation to support his representation that the information redacted in the following documents are the names of victims: (1) EFTA01187999: the first and last name that was redacted twice; (2) EFTA02504630: the first and last name that was redacted and that appears before a complete email address that was also redacted; and (3) EFTA01022356: the first and last name that was redacted and that appears before a complete email address that was also

redacted. Accordingly, pursuant to the Court's "inherent authority to review . . . material *ex parte*, *in camera* as part of its judicial review function," *see Jibril v. Mayorkas*, 101 F.4th 857, 866 (D.C. Cir. 2024) (citation modified); the Court will order Defendant to provide documentation for the Court's *in camera* review to support his representation that these redactions are the names of victims.

Regarding EFTA00749245 and EFTA00628112, Defendant states that the redacted portions of these emails contain private email addresses, which were redacted pursuant to the Review Protocol which provided for withholdings under the Privacy Act, including email addresses. *See EFTA First Level Review Protocol* at 8 (Jan. 4, 2026). The Review Protocol is a Department of Justice memorandum that memorialized the protocol for attorneys conducting responsiveness review of the Epstein files and provided guidance on redacting victim identifying information and "other protected categories of information." *EFTA First Level Review Protocol* at 1 (Jan. 4, 2026). The Review Protocol required attorneys to redact personally identifying information including email addresses pursuant to the Privacy Act. *Id.* at 8. The Court's *in camera* review of these documents confirms that the redactions are of private email addresses.

Whether the EFTA permits Defendant to redact information pursuant to the Privacy Act is not presently before the Court,

as Plaintiff did not move for preliminary injunctive relief on this issue. *See generally* Mot., ECF No 9-1. Defendant's December 19, 2025 letter to Congress described the Review Protocol and attached the Review Protocol to the letter. *See* Letter from Todd Blanche, Deputy U.S. Att'y Gen., to Members of Congress at 2 (Dec. 19, 2025), Exhibit D to Ward-Packard Decl., ECF No. 9-3. Plaintiff was therefore on notice that redactions were made pursuant to the Privacy Act. The legal question of whether the EFTA permits redactions under the Privacy Act can be raised by Plaintiff in subsequent proceedings. Accordingly, the Order to Show Cause as to the redactions in EFTA00749245 and EFTA00628112 will be **DISCHARGED**.

### B. Redaction of Potential Co-Conspirator Names, and Names and Email Addresses of Government Personnel

The Court has reviewed the documents Defendant submitted to the Court at the August 13, 2026 status hearing. The Court finds that Defendant has provided adequate documentation to support his representation that the names of victims have been redacted in EFTA00038227 and EFTA00194840. EFTA00194840 is substantially similar to EFTA01703108, which was cited in the Court's Preliminary Injunction Order and for which Defendant has been unable to locate an unredacted version. The Court also finds that the unredacted documents indicate that the other redactions in the documents are the names of a government attorney and law

enforcement personnel and their email addresses. The Review Protocol requires the redactions of government personnel and their email addresses. See *EFTA First Level Review Protocol* at 8 (Jan. 4, 2026). Accordingly, the Order to Show Cause as to EFTA00038227 and EFTA01703108 will be **DISCHARGED.**

**C. Withholding of Underlying FBI Interview Notes**

The Court rejects Defendant's assertion that the underlying handwritten FBI notes that formed the basis for certain FD-302 reports were properly withheld because they are "substantially similar to" and therefore duplicative of the typewritten reports. Def.'s Resp., ECF No. 19 at 14. The Review Protocol contains no directive requiring the withholding of "substantially similar" or "duplicative" documents. *See generally EFTA First Level Review Protocol* (Jan. 4, 2026). The Review Protocol does provide guidance regarding duplicate documents, *see id.* at 3; but the documents at issue here are not duplicate documents. The underlying handwritten notes are not duplicates of the FD-302 interview reports. Furthermore, "Plaintiff has identified nearly 100 additional examples of handwritten interview notes produced by Defendant." Notice to Court, ECF No. 33 at 2.

Pursuant to the Court's "inherent authority to review . . . material *ex parte*, *in camera* as part of its judicial review function," *see Jibril v. Mayorkas*, 101 F.4th 857, 866 (D.C. Cir.

2024) (citation modified); the Court will order Defendant to submit to the Court the underlying FBI interview notes that formed the basis for the FD-302 interview reports bearing Bates numbers EFTA01245620, EFTA02858481, EFTA02858491, and EFTA02858495 in both redacted and unredacted versions.

Defendant contends that ordering *in camera* review of documents here would set a bad precedent and requests that the Court stay its request for *in camera* review so Defendant can appeal the jurisdictional issues. Def.'s Resp. to Minute Order, ECF No. 37 at 2-3. As an initial matter, Defendant has already provided documents to the Court for its *in camera* review. And Defendant has already appealed the jurisdictional issues, and the Court of Appeals for the District of Columbia Circuit has entered a scheduling order requiring procedural motions to be filed by September 24, 2026, and dispositive motions to be filed by October 9, 2026. *See Phang v. Blanche*, Case No. 26-5299 (D.C. Cir.). Accordingly, the Court will not stay its order.

**D. Review of Foreign Language Materials**

As stated above, Defendant did not respond substantively to Plaintiff's merits arguments in her Motion for Preliminary Injunction, resting entirely on his arguments that her claims fail as a matter of law based on his jurisdictional arguments. *See* Opp'n, ECF No. 12 at 14. Nor did he respond substantively to her proposed order. *See generally id.* In the Preliminary

Injunction Order, the Court ordered Defendant to initiate review and production of foreign-language materials that may be subject to production under the EFTA, and to provide notice to the Court and all parties that such review is underway by no later than July 2, 2026. Order, ECF No. 15 at 2. In response, Defendant states that the "Court should not supplant Congress's acceptance of [its] explanation" that it did not review any foreign language documents because "it was not practicable for a first-level reviewer to determine the responsiveness of a foreign language document." Def.'s Resp., ECF No. 19 at 14. Defendant provides no legal support for his position, stating only that "the Government continues to believe that the Court lacks the authority to" "supplant Congress's acceptance of this explanation." *Id.*

In Plaintiff's response to Defendant's response to the Court's Preliminary Injunction Order, she argues that the Court should find Defendant in civil contempt based on, among other things, his failure to begin reviewing and producing foreign language documents. *See* Pl.'s Resp., ECF No. 20 at 10. The Court recognizes that its Preliminary Injunction Order did not give Defendant the option to show cause why he could not comply with the foreign-language materials portion of the order. This was appropriate at the time given his lack of response to Plaintiff's merits arguments in his Opposition to her Motion for

Preliminary Injunction. *See* Opp'n, ECF No. 12 at 23. However, Defendant has now stated his rationale for not initiating the review, and so a civil contempt finding at this juncture would be premature.

The Court concludes that Defendant's rationale for not initiating the review of the foreign language materials is without merit. As the Court has previously stated, the EFTA is an unprecedented disclosure law requiring the Attorney General to make publicly available in a searchable and downloadable database all unclassified Department of Justice files related to its investigation of the notorious sexual predator and child sex trafficker Jeffrey Epstein, the child sex trafficker Ghislaine Maxwell, and their associates, subject to certain exceptions and permitted withholdings. Recognizing that the obligations under the EFTA extend to relevant materials in any language, Defendant informed Congress on January 30, 2026, that foreign language materials had not been reviewed or produced "[b]ecause it was not practicable for a first-level reviewer to determine the responsiveness of a foreign-language document." Letter from Todd Blanche, Deputy U.S. Att'y Gen., Re: Epstein Files Transparency Act – Production of Department Materials at 5 (Jan. 30, 2026), Exhibit E to Ward-Packard Decl., ECF No. 9-3. Defendant cites no authority for the proposition that administrative inconvenience excuses him from meeting his statutory obligations. Nor does he

cite any authority for his apparent contention that Congressional silence in response to the January 30, 2026 letter functions as an implied amendment to the EFTA. Defendant's rationale is without merit.

Having rejected Defendant's rationale, the Court will order Defendant to initiate review and production of foreign-language materials that may be subject to production under the EFTA and provide notice to the Court and all parties that such review is underway by a date certain.

"[C]ourts have the inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "A contempt finding is proper where 'the putative contemnor has violated an order that is clear and unambiguous' and the violation of an order is 'proved by clear and convincing evidence.'" *Phillips v. Mabus*, 894 F. Supp. 2d 71, 91 (D.D.C. 2012) (quoting *Armstrong v. Exec. Off. of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (citation modified)). To the extent Defendant is of the opinion that the Court's Memorandum Opinion and Order is not "clear and unambiguous," *id.*; he shall seek clarification from the Court by no later than September 21, 2026.

**E. Compliance with EFTA § 2(c)(2)**

Section 2(c)(2) of the EFTA provides that "[a]ll redactions must be accompanied by a written justification published in the Federal Register and submitted to Congress." EFTA § 2(c)(2). Section 3 of the EFTA requires that upon the completion of the release of documents required by the EFTA, Defendant submit a report to Congress listing: (1) all categories of records released and withheld; (2) a summary of redactions made, including legal basis; and (3) a list of all government officials and politically exposed persons named or referenced in the released materials, with no redactions permitted under subsection (b)(1). EFTA § 3. Defendant submitted the Section 3 Report on February 14, 2026. *See* Letter from Todd Blanche, Deputy U.S. Att'y Gen. to Chairman Chuck Grassley, Ranking Member Dick Durbin, Chairman Jim Jordan, Ranking Member Jamie Raskin (Feb. 14, 2026), Exhibit F to Ward-Packard Decl., ECF No. 9-3. On August 27, 2026, Defendant published the February 14, 2026 Section 3 Report to Congress in the Federal Register and claims that this satisfies section 2(c)(2) of the EFTA. *See* Def's Resp. to Minute Order, ECF No. 37.

Plaintiff argues that Defendant's reporting obligations under section 2(c)(2) and section 3 of the EFTA are different reporting requirements and that the Section 3 Report is "offensively insufficient to comply with the Defendant's

obligations under Section 2(c)(2)." Reply to Proposed Order, ECF No. 40 at 4. However, Plaintiff did not move for preliminary injunctive relief on what the EFTA requires the section 2(c)(2) "written justification" to contain. In her Motion for Preliminary Injunction, Plaintiff argued that Defendant violated the EFTA by failing to publish the section 2(c)(2) "written justification" at the same time any redacted files were produced. Mot., ECF No. 9-1 at 30-31. She describes the "written justification" as a log, but she does not move for preliminary injunctive relief on what specific information the EFTA requires the written justification to include. *See id.* at 30-31. Accordingly, the Order to Show Cause as to Defendant's compliance with section 2(c)(2) of the EFTA will be **DISCHARGED.** The legal question of whether the Section 3 Report to Congress satisfies the section 2(c)(2) provision can be raised by Plaintiff in subsequent proceedings.

## III. Conclusion and Order

For the reasons stated above, it is **HEREBY**

**ORDERED** that the Order to Show Cause as to the redactions in (1) EFTA01930501; (2) ETFA01928255; (3) EFTA02648868; (4) EFTA00038227; and (5) EFTA01703108 is **HEREBY DISCHARGED;** and it is further

**ORDERED** that Defendant shall provide, by no later than September 24, 2026 at 11:00 am, documentation for the Court's *in*

*camera* review to support his representation that the following redactions are the names of victims: (1) EFTA01187999: the first and last name that was redacted twice; (2) EFTA02504630: the first and last name that was redacted and that appears before a complete email address that was also redacted; and (3) EFTA01022356: the first and last name that was redacted and that appears before a complete email address that was also redacted; and it is further

**ORDERED** that the Order to Show Cause as to the redactions in (1) EFTA00749245 and (2) EFTA00628112 is **HEREBY DISCHARGED**; and it is further

**ORDERED** that Defendant shall submit to the Court for its *in camera* review the underlying FBI interview notes that formed the basis for the FD-302 interview reports bearing Bates numbers EFTA01245620, EFTA02858481, EFTA02858491, and EFTA02858495 in both redacted and unredacted versions on September 24, 2026 at 11:00 am; and it is further

**ORDERED** that Defendant shall initiate review and production of foreign-language materials that may be subject to production under the EFTA and provide notice to the Court and all parties that such review is underway by no later than September 24, 2026; and it is further

**ORDERED** that to the extent Defendant is of the opinion that the Court's order to initiate review and production of foreign-language materials that may be subject to production under the EFTA and provide notice to the Court and all parties that such review is underway by no later than September 24, 2026 is not "clear and unambiguous," he shall seek clarification from the Court by no later than September 21, 2026; and it is further

**ORDERED** that the Order to Show Cause as to Defendant's compliance with section 2(c)(2) of the EFTA is **HEREBY DISCHARGED.**

**SO ORDERED.**

**Signed: Emmet G. Sullivan**
**United States District Judge**
**September 16, 2026**

# Attachment C

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATIE PHANG,<br><br>Plaintiff,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States,<br><br>Defendant. | Civil Action No. 26-1417 (EGS) |

**ORDER**

On September 16, 2026, the Court issued a Memorandum Opinion and Order addressing the parties' responses to the Court's June 25, 2026 Preliminary Injunction Order in this matter. *See* Mem. Op. & Order ("Order"), ECF No. 43. Now pending before the Court is Defendant's Motion for a Partial Stay Pending Appeal of the Court's September 16, 2026 Order. *See* Mot. for Partial Stay, ECF No. 46. Defendant seeks a stay of the portion of the Order requiring him to initiate review and production of foreign-language materials that may be subject to production under the Epstein Files Transparency Act ("EFTA") and provide notice to the Court and all parties that such review is underway by no later than September 24, 2026. *See id.* Plaintiff has filed an opposition to the motion, ECF No. 47; and Defendant has filed a reply, ECF No. 48. Upon careful consideration of the

motion, opposition, and reply, and for the reasons explained below, the Court denies the motion.

Local Civil Rule 7(m) sets forth litigants' duty to confer on nondispositive motions. It provides that

> [b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. . . . A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

LCivR 7(m). Defendant's motion to stay is nondispositive since, if granted, it "would result [n]either in the determination of particular claim on the merits or elimination of such a claim from the case." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997). It would merely stay enforcement of a portion of the Court's September 16, 2026 Order. Defendant was therefore obligated to consult with Plaintiff before filing the motion and certify that he had done so. *Oceans v. U.S. Dep't of Interior*, No. 24-cv-141-RCL, 2024 WL 1885543, at *3 (D.D.C. Apr. 30, 2024) ("But just conferring is not enough: the party must also certify whether it has done so and whether the motion is opposed."). Defendant did neither. He filed the motion on Friday, September 18, 2026, at 8:45 pm and requested that the Court rule on the motion by Monday, September

21, 2026 by 5:00 pm. Mot. for Partial Stay, ECF No. 46 at 25.[1] Because he did not comply with the duty to confer, Defendant provided no notice to Plaintiff that he would be filing a motion for partial stay and requesting a ruling on an expedited basis over the Jewish Yom Kippur holiday.

It is settled precedent that "a litigant's violation of Local Rule 7(m) is, on its own, reason the deny their motion." *Johnson v. ACB Ideas, LLC*, No. 23-cv-2944-RCL, 2024 WL 3225994, at *2 (D.D.C. June 28, 2024) (Lamberth, J.) (quoting *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 316 F. Supp. 3d 22, 24 (D.D.C. 2018)). Some courts in this District, however, exercise their discretion and for reasons of judicial economy consider the merits of a motion even if the moving party has violated the rule. *See Indiana v. Haaland*, Civil Action No. 24-1665, 2024 WL 5213401, at *5 (D.D.C. Dec. 24, 2024).

Defendant questions whether Local Rule 7(m) "technically" applies, apparently because he has previously raised the issue of a stay pending appeal with Plaintiff, and Plaintiff has been clear that she opposes a stay. Reply, ECF No. 48 at 6. Defendant provides no legal authority to support his suggestion that the rule may not "technically" apply here. And while some courts

[1] In his Reply briefing, Defendant requested that the Court rule on the motion by 8:00 pm on September 21, 2026. Reply, ECF No. 48 at 10.

choose to consider the merits despite noncompliance with the rule, this Court, in its discretion, declines to do so here. Local Civil Rule 7(m) applies, and Defendant failed to comply with his duty to confer. Accordingly, the motion will be denied.

Even if the Court did not deny the motion because of Defendant's failure to comply with the duty to confer, however, the Court would deny it on the merits. Assuming, without deciding, that the Court's September 16, 2026 is appealable, the Court would deny the motion for partial stay for the reasons explained in the Court's Memorandum Opinion granting Plaintiff's Motion for Preliminary Injunction, ECF No. 16.

Because of the fast-approaching deadline for Defendant to initiate review and production of foreign-language materials that may be subject to production under the EFTA and provide notice to the Court and all parties that such review is underway, however, the Court will temporarily stay that portion of its September 16, 2026 Order so that Defendant may file a motion for stay pending appeal with the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). Defendant states that he will move to expedite his motion to stay pending appeal. *See* Reply, ECF No. 48 at 5.

For the reasons stated above, it is hereby

**ORDERED** that Defendant's Motion for a Partial Stay Pending Appeal of the Court's September 16, 2026 Order, ECF No. 46, is **DENIED**; and it is further

**ORDERED** that the portion of the Court's September 16, 2026 Order requiring Defendant to initiate review and production of foreign-language materials that may be subject to production under the EFTA and provide notice to the Court and all parties that such review is underway by no later than September 24, 2026 is **TEMPORARILY STAYED.** The parties shall file a joint Notice with recommendations for further proceedings by no later than three days after the D.C. Circuit resolves Defendant's forthcoming motion to stay in that court.

**SO ORDERED.**

**Signed:** **Emmet G. Sullivan**
**United States District Judge**
**September 21, 2026**