**ORAL ARGUMENT NOT YET SCHEDULED**

---

Nos. 26-5299, 26-5334

---

In the United States Court of Appeals
for the District of Columbia Circuit

---

**Katie Phang**

*Plaintiff-Appellee*,

v.

**Todd Blanche**, in his official capacity
as Attorney General of the United States,

*Defendant-Appellant*.

---

On Appeal from Orders
of the United States District Court
for the District of Columbia

---

# APPELLANT'S REPLY IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL AND RESPONSE TO MOTION TO DISMISS

---

## TABLE OF CONTENTS

TABLE OF CONTENTS .......... i

INTRODUCTION .......... 1

I. Defendant Will Suffer Severe Irreparable Harm Absent A Stay .......... 3

II. Defendant Is Likely To Succeed On The Merits .......... 5

a. Phang Lacks Authority To Enforce The EFTA .......... 5

i. Phang Lacks A Right Of Action .......... 5

ii. Phang Lacks Article III Standing .......... 12

b. The District Court Should Not Have Granted Full Relief As To The Foreign-Language Documents .......... 17

III. The Remaining Factors Favor A Stay .......... 21

IV. Phang's Motion To Dismiss Should Be Denied .......... 23

CONCLUSION .......... 25

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

Plaintiff-Appellee Katie Phang mischaracterizes Defendant's conduct and arguments. But this appeal is not about what the Epstein Files Transparency Act (EFTA) requires. It is about whether Congress intended disputes over implementation of the EFTA to be resolved through congressional oversight and the political process or through piecemeal litigation and judicial supervision. Defendant's stay motion is about the narrower issue of what should happen while this Court resolves that important question. Documents cannot be unreviewed or unproduced, and Phang cannot seriously dispute that Defendant will suffer quintessential irreparable harm absent a stay pending appeal.

Phang also fails to undermine Defendant's likelihood of success. Her various forfeiture arguments are all red herrings. And Phang offers no persuasive reason to conclude that the EFTA's bespoke disclosure regime contemplates blunderbuss enforcement through the Administrative Procedure Act (APA). She certainly cannot explain why, if such enforcement were permitted, Congress would be considering amending the EFTA to add a private right of action. Nor does Phang

have Article III standing. She continues to rely on generalized injuries and speculative purported financial harms.

Phang also misunderstands Defendant's arguments with respect to the scope of the preliminary injunction. The question is not whether the district court gave Phang 100% of the relief requested in her complaint. The question is whether the relief the district court gave her could work to prevent a full merits presentation. That is the effect of the orders on appeal.

The other stay factors likewise support Defendant. Phang cannot show harm from a brief stay. Her argument that she could not have moved earlier for a preliminary injunction is difficult to take seriously given that Defendant publicly advised Congress and the public on January 30, 2026, that no foreign language documents had been produced. The public interest also favors a stay to ensure this Court conclusively resolves the important issues presented.

This Court should grant a stay pending appeal. The Court should also deny Phang's motion to dismiss. But its resolution of that motion will have little if any bearing on the parties' legal obligations given that Defendant seeks a stay of both the June 25 and September 16 orders.

## I. Defendant Will Suffer Severe Irreparable Harm Absent A Stay

When relief without a stay would "irreversibly alter[]" the status quo, a movant demonstrates irreparable harm. *See Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978). That is the case here, because the district court has ordered Defendant "to release documents prior to having the opportunity to seek meaningful appellate review." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 173, 177 (D.D.C. 2007). There is nothing "bizarre" (Pl's. Br. 37) about Defendant's commonsense assertion that once documents are reviewed and produced, this Court would not have occasion to decide whether Phang can compel such review and production. That is true regardless of whether the EFTA contains a "substantive disclosure obligation" requiring such review and production—which goes to the merits, not irreparable harm. *Contra* Pl's. Br. 37.

Even Phang does not squarely dispute that denial of a stay could have irreversible consequences, including potentially mooting this appeal. At best, she argues that "[n]o immediate disclosure is required." Pl's. Br. 36. But the district court's order requires Defendant to "initiate review *and production* of the foreign language materials." Add.66

(emphasis added). Phang herself argues that Defendant cannot "withhold" documents once reviewed and found "subject to disclosure." Pl's. Br. 37. And below, just 18 days after the district court's June 25 order, Phang asked the court to hold Defendant in contempt on the theory that Defendant had been required "to begin *producing* foreign language documents." ECF 20 at 10 (emphasis added). Phang cannot baselessly accuse Defendant of violating court orders while changing positions on what those orders require when convenient.

Phang's ancillary irreparable harm arguments fail for similar reasons. The district court has not adopted Phang's view that Defendant has "willfully misread and def[ied] an unambiguous court order" since June 25. Pl's. Br. 38. And in accusing Defendant of "unreasonable delay," Pl's. Br. 39, Phang does not address, let alone overcome, the productive dialogue that has occurred between Defendant and the district court, *see* Mot. for Stay Pending Appeal (Mot.) 8-10, 13-14. Parties should not be incentivized to short-circuit good-faith communications with district judges and to rush to this Court seeking emergency relief.

Phang resorts to arguing that Defendant's harm is not "specific[]" enough. Pl's. Br. 38. But although the Department would need to review

thousands of documents in many different foreign languages, such details are unnecessary to understand the harm that follows as a matter of course from review and disclosure that cannot be undone. Such logical, "cat out of the bag" harm is self-evident. *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005).

## II. Defendant Is Likely To Succeed On The Merits

### a. Phang Lacks Authority To Enforce The EFTA

#### i. Phang Lacks A Right Of Action

It is undisputed that the EFTA does not create a private right of action. And particularly when read together, the relevant "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). FOIA gives individuals a right to obtain certain information from the government; the EFTA requires broader public disclosure, backed by congressional oversight and reporting provisions, but lacks any mechanism for individuals to obtain those additional records outside that framework. All of this suggests that the statutory scheme "precludes judicial review" of Phang's claims. *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984).

Phang's contrary arguments are without merit. To start, she asks the court to ignore this point as forfeited. Pl's Br. 24. But Defendant

argued below that the APA "does not apply when 'statutes preclude judicial review,'" ECF 12 at 20 (quoting 5 U.S.C. § 701(a)), that "[r]ead in *pari materia*, the Epstein Act and FOIA operate in harmony," and that "[p]ermitting Plaintiff to circumvent the remedial scheme established by Congress would disrupt that harmony," *id.* at 22. Defendant thus clearly raised the issue. Even if Defendant's "emphasis has changed" on appeal, nothing prevents Defendant from providing "additional support for his side of an issue." *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 790 (D.C. Cir. 2019); *see also id.* ("[P]arties are not limited to the precise arguments they made below." (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)).[1]

After accusing Defendant of not raising an argument that Defendant has raised, Phang attacks a straw man argument that Defendant has not. To be clear, Defendant is not arguing that the mere "lack of an [EFTA]-specific right of action," in and of itself, requires the inference "that Congress meant to preclude judicial enforcement." Pl's.

---

[1] Even if Defendant had not raised this point, this Court could and should exercise its "discretion to address" this issue involving both "uncertainty in the law" and a "novel, important, . . . question[] of federal law." *Flynn v. Comm'r*, 269 F.3d 1064, 1069 (D.C. Cir. 2001).

Br. 24. Nor does anything about Defendant's argument suggest that all other statutes omitting a right of action (such as the National Environmental Policy Act (NEPA)) preclude APA review. *See id.* at 25.

Defendant's argument is specific to this statutory scheme. In enacting the EFTA, Congress legislated against the backdrop of FOIA—a detailed system for private litigants to secure judicially compelled access to records—and imposed additional public disclosure duties while layering congressional and Federal Register reporting requirements, which suggests that Congress sought to expand the Department's disclosure obligations without expanding the availability of private litigation to enforce such obligations. In other words, Congress carefully thought about disclosure in this context, such that its omission of a right of action cannot fairly be characterized as "an uninformative consequence of the limited scope of the statute." *United States v. Fausto*, 484 U.S. 439, 448 (1988).

When she finally gets around to addressing this argument, Phang has little to say. She acknowledges that a statutory scheme precludes judicial review when it contains "elaborate review provisions" for "some but not all" of a particular type of claim. Pl's. Br. 25–26. But that is an

apt description of FOIA and EFTA when read together. A private litigant can use judicial process set forth in this reticulated statutory scheme to get a wide range of agency documents in various ways, but not the ones that Phang seeks in the way she seeks them. And even when considered in isolation, the congressional and Federal Register reporting requirements strongly suggest that "Congress deliberately intended to foreclose . . . review of such claims" in favor of congressional and political checks. *Fausto*, 484 U.S. at 448.

That leads to another point about congressional intent. Given the public interest in these records, allowing private judicial enforcement would be a significant policy decision that fundamentally alters the relationship between private parties, the courts, and the Executive Branch when it comes to disclosure. "Congress . . . does not . . . hide elephants in mouseholes." *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001). And nothing in the EFTA (or even its legislative history) suggests congressional intent to take that major step.

Even if otherwise, the APA would not provide a right of action because FOIA is an "adequate remedy" under 5 U.S.C. § 704. Phang argues that FOIA is not an adequate remedy because Phang could not

get the EFTA records under that statute. Pl's Br. 26–27. But "[t]he relevant question under the APA" is not whether the alternative path is "as effective as an APA lawsuit"—"less effective" pathways still count if "they provide relief of the same genre as that offered by an APA claim." *Garcia v. Vilsack*, 563 F.3d 519, 252 (D.C. Cir. 2009) (internal quotation marks omitted).

Phang fails to cite any case holding that FOIA was not an adequate remedy when a Plaintiff sought records under the APA. Instead, she highlights language from *Bowen v. Massachusetts* stating that a Medicaid reimbursement disallowance order was subject to APA review because only "doubtful and limited relief" was available under the Tucker Act. *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988). But in *Bowen*, the Court of Federal Claims lacked even "general equitable powers . . . to grant prospective relief," and the Claims Court's power to "entertain the action" at all was "at least doubtful." *Id.* at 905. In other words, there was no avenue for the plaintiff to even *seek* relief of the same genre. *See CREW v. U.S. Dep't of Justice*, 846 F.3d 1235, 1246 (D.C. Cir. 2017) ("[T]his case differs dramatically from *Bowen*, in which the Court rejected

an alternative remedy that offered only monetary relief as an inadequate substitute for the 'general equitable powers of a district court.'").

By contrast, Phang could invoke FOIA review procedures; she just will not be successful under them. And "the possibility that a plaintiff 'might fare worse' under FOIA does not entitle her to bring a claim under the APA." *Chaverra v. Immigr. & Customs Enf't*, Civ. A. No. 18-289 (JEB), 2018 WL 4762259, at *4 (D.D.C. Oct. 2, 2018) (quoting *Greenpeace, Inc. v. DHS*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018)).

Phang seeks to distinguish these authorities as rejecting attempts to enforce FOIA itself through the APA. Pl's Br. 29. But their reasoning is broader than that: "FOIA is the exclusive remedy for obtaining [purportedly] improperly withheld agency records." *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011) (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 777 (D.C. Cir. 2002)). In any event, this Court has shut down attempts to use the APA to enforce other disclosure laws because "FOIA provides an adequate remedy." *Powell v. Yellen*, No. 22-5200, at *1 (D.C. Cir. Dec. 28, 2023) (per curiam) (rejecting attempt to obtain tax records under 26 U.S.C. § 6103).

Phang's alternative argument that FOIA "does *not* afford Phang the 'same genre' of remedy as the APA" does not pass the straight-face test. Pl's Br. 28. "The relevant 'genre' here is easy to identify: the disclosure of documents[.]" *Chaverra*, 2018 WL 4762259, at *4. "That is what Plaintiff seeks, and that is what FOIA provides." *Id.* Phang nevertheless asserts, without citing any authority, that the "remedy" she seeks is "judicial review of final agency action." Pl's. Br. 28. Of course, judicial review may sometimes lead to a "remedy," but it is not a remedy in its own right. The actual remedy Phang seeks is easy to find—in the district court's orders requiring review and production of documents. That is the relief a successful FOIA litigant gets.

The same logic is fatal to Phang's reliance on FOIA denial letters explaining that the EFTA mandates broader disclosure than FOIA. Pl's. Br. 27. The EFTA mandates such disclosure to the public, not to private litigants. Nothing about those letters implies that private parties can use the APA as an end-run around the FOIA-EFTA disclosure regime.

Finally, as to the overarching question whether APA review is available, Phang's theory is irreconcilable with the proposed EFTA II. That proposed bill would amend the EFTA to add a right of action (which

would not extend to Phang). *See* Mot. 6-7. Phang responds by citing a Supreme Court decision declining to stay a prisoner's execution when the government, in supporting a stay, pointed to future legislation that could have given the Supreme Court jurisdiction. Pl's. Br. 29 (citing *Garcia v. Texas*, 564 U.S. 940, 941 (2011)). But Defendant is not asking the court to "rule on what the law . . . eventually might be." *Id.* (quoting *Garcia*, 564 U.S. at 941). Defendant is pointing out that this near-contemporaneous proposal is suggestive of "what the law is" right now. *Id.* (quoting *Garcia*, 564 U.S. at 941). It would make no sense to propose adding an EFTA II cause of action if a (much broader) APA cause of action were already available. This Court should at least grant a stay while it resolves that question of first impression.

**ii. Phang Lacks Article III Standing**

Because the EFTA lacks any individual rights-creating language, Phang also lacks Article III standing. The mere asserted violation of a public disclosure obligation is a "generalized grievance." *United States v. Richardson*, 418 U.S. 166, 176 (1974). That is why private parties have standing to seek information where FOIA provides a "particularized" "right to receive" the information, but not when FOIA merely requires

making information "electronically available to the public." *Prisology, Inc. v. Federal Bureau of Prisons*, 852 F.3d 1114, 1115, 1117 (D.C. Cir. 2017). In this case, it is clear that Phang's goal is "[v]indicating the public interest (including the public interest in Government observance of the law," not remedying any particularized injury. *Lujan v Defenders of Wildlife*, 504 U.S. 555, 576 (1992).

Aside from a passing mention of legally irrelevant alleged "harms to victims and the public," Pls. Br. 26, Phang does not defend the district court's reliance on extraneous factors such as "potential judicial redress for victims" and "the upcoming mid-term elections," Add.41–42. Instead, she argues that she is suffering an economic injury because she would report on the foreign-language documents and an informational injury because she wants documents that, in her view, the EFTA requires to be disclosed to the public. *See* Pl's. Br. 17–22. Each theory fails.

Start with informational injury. Phang argues that under *FEC v. Akins*, there is always an informational injury when a plaintiff "fails to obtain information which must be publicly disclosed pursuant to a statute." Pl's. Br. 19 (quoting 524 U.S. 11, 21, 1998)). But that language must be understood in context; *Akins* concerned a statute that

"specifically provided" a mechanism allowing private parties to challenge any failure to disclose information in district court. *See* 524 U.S. at 19. Thus, although the Supreme Court recognized that the plaintiff's informational injury was "widely shared," the Court emphasized that this did "not deprive Congress of constitutional power to authorize its vindication in the federal courts." *Id.* at 24–25. That reasoning is not instructive when Congress has omitted individual rights-creating language from a statute. The same is true for the other key case on which Phang relies. *See Friends of Animals v. Jewell*, 828 F.3d 989, 990–92 (D.C. Cir. 2016) (describing rights-creating language in the Endangered Species Act).

Absent such language, a plaintiff cannot assert an injury common to anyone who simply wants disclosure of records. *Contra* Pl's. Br. 20 (citing *Pub. Citizen v. DOJ*, 491 U.S. 440, 449-50 (1989)). In *Public Citizen*, the plaintiff's particularized injury stemmed from the fact that he had, on an individual basis, "specifically requested, and been refused," the relevant information before seeking to compel public disclosure. 491 U.S. at 449 (explaining that for standing, a plaintiff need not "show more than that they sought and were denied specific agency records"). Phang

has not done that here. Instead, and tellingly, she sought public (rather than individual) disclosure in an attempt to enforce compliance with general obligations (rather than to obtain specific records) in the first instance. *See* ECF 1 at 14 (asking the court to "direct Defendant to . . . [p]roduce all materials that have not been produced that, by law, should be"). Phang's asserted injury is thus precisely the sort of "abstract and indefinite" one that this Court (in another *Public Citizen* case) has rejected: "harm to the common concern for obedience to the law." *Public Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1293 n.1 (D.C. Cir. 2007) (quotation omitted).

Of course, Congress may vest many, or even all, members of the public with an individual right to information whose asserted violation would give rise to a particularized injury. This is, for example, what Congress has done in FOIA by "requir[ing] an agency to make nonexempt records" "available to any person upon that person's request." *Prisology,* 852 F.3d at 1117 (quotation omitted). That scheme vests all persons who request certain information with a particularized right to receive it. By contrast, as Phang does not contest, the EFTA does not vest any

individual with a right to receive documents; instead, the EFTA imposes an obligation on the Department for the benefit of the public.

Phang also asserts a purported economic injury. She emphasizes the undisputed principle that economic loss is "a classic form" of injury. Pl's. Br. 17 (quoting *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 9 (D.C. Cir. 2015)). But in a later appeal in the same case, this Court held that the plaintiff had failed to adequately establish such a loss with bare claims of financial harm. *Humane Soc'y of the U.S. v. Perdue*, 935 F.3d 598, 603 (D.C. Cir. 2019). When not receiving something or other from the government "*may*" cause downstream economic challenges, "[t]his is . . . the kind of uncertain and unspecific prediction of future harm that is inadequate to establish Article III standing." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 242 (D.C. Cir. 2015).

At best, Phang points to that sort of uncertain and unspecific harm. She argues that she has standing to bring this lawsuit because she wants to make money off the foreign-language documents "episode-by-episode." Pl's Br. 18. To be sure, Phang maintains a YouTube channel that covers Epstein-related topics. But that does not mean Phang would make more money if foreign language documents are released to the greater public.

Her theory appears to be that *if* the foreign-language documents contain newsworthy information, she (along with any other interested journalist) will report on those documents, and in doing so she *may* earn more money than she otherwise would. *See* Pl's. Br. 18. That sort of speculative benefit would exist in virtually every case in which a member of the media seeks information from the government.

**b. The District Court Should Not Have Granted Full Relief As To The Foreign-Language Documents**

Even if Phang were entitled to some relief, the district court's orders go too far. "[A] preliminary injunction should not work to give a party essentially the full relief he seeks on the merits." *Org. of Am. Historians v. OMB*, 834 F. Supp. 3d 105, 110 (D.D.C. 2026) (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam) (cleaned up). By ordering Defendant to review and produce the foreign-language documents at this preliminary stage, the district court strayed beyond that limitation.

Phang understandably does not want this Court to reach that issue. But the argument is plainly not forfeited. It was repeatedly "made in the PI briefing." *Contra* Pl's. Br. 34. Specifically, Defendant argued that Phang's "motion effectively asks this Court to resolve the merits of the

case at the outset under the pretext of injunctive relief—contrary to both tradition and precedent." ECF 12 at 1; *see also id.* at 18 ("By seeking relief at a preliminary stage, [Phang] seeks the disclosure of information before each party is able adequately to test the claims and frame the contours of the dispute for a decision by the Court."). The district court then "passed on the issue," *United States v. Williams*, 504 U.S. 36, 41 (1992) (quotation omitted), albeit in conclusory fashion, Add.48 ("Ms. Phang is not seeking full relief on the merits in the pending motion.").

Otherwise, all Phang musters is that she asked the district court to do other things, too—like the "appointment of a special master to oversee compliance" with the EFTA. Pl's. Br. 34 (citing Add.16). Phang appears to believe a preliminary injunction is proper so long as it does not give a plaintiff everything she requested in a complaint. But the point is that preliminary injunctions "do not conclusively resolve legal disputes," *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025), regardless of whether such disputes comprise entire cases. In this context, "full relief" is shorthand for an injunction that "alter[s], rather than preserves the *status quo* by commanding some positive act" in a manner that negates a further "trial on the merits"—such as when a party is ordered to "quickly release

records." *Org. of Am. Historians*, 109-10 (D.D.C. 2026) (quotations omitted). Adding far-fetched requests for relief to a complaint does not magically render such an injunction proper.

For all the same reasons, Phang's argument that "the district court applied the correct APA standard," Pl's. Br. 31 (formatting modified), misses the point. The parties did not dispute, and the district court did not meaningfully address, the correct APA standard or how it should apply to Phang's claims. That is because—as the district court repeatedly emphasized—Defendant raised only threshold arguments. Add.38. It is Phang, not Defendant, who now seeks to litigate "this argument for the first time" in this Court. Pl's. Br. 31. Defendant has merely flagged the issue to underscore Defendant's lost right to provide a full merits presentation.[2]

That said, Phang's faulty APA arguments underscore why this error matters. No one disputes that a court "can compel agency action"

---

[2] Phang appears to acknowledge that arguments raised at the preliminary-injunction stage bind Defendant only "for purposes of the . . . appeal of the PI order." Pl's. Br. 30. To be clear, Defendant has never "conceded" any EFTA violation. The district court simply treated the issue as "conceded" for purposes of preliminary-injunction briefing and in light of local rules. Add.38.

under the APA. Pl's. Br. 31. But a court must apply the proper standard before doing so. That standard reaches only "specific, unequivocal command[s] . . . about which an official ha[s] no discretion whatever." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2024). Yet throughout her brief, Phang emphasizes that Defendant "will only produce documents that *he* (not the court) reviews and *he* (not the court) concludes must be disclosed by law." Pl's. Br. 37; *see id.* at 36 (arguing that Defendant "himself determines" what should be produced).[3] So on Phang's own telling, Defendant has discretion in implementing this aspect of the EFTA.[4] At a minimum, the parties should get a chance to argue about that before Defendant is required to produce documents.

Indeed, Phang's response highlights alternative approaches the district court could have taken (assuming Phang had a cause of action

---

[3] *But see* Pl's. Br. 37 n.4 (foreshadowing "further litigation" over specific redactions and withholdings if the district court continues down this path).

[4] Phang also argues that cases addressing the standard for agency "delay . . . are inapposite" because Defendant has not "simply delayed." Pl's. Br. 33 (emphasis omitted). But Phang does not address Defendant's actual argument: The delay cases are relevant to the extent the district court has not only compelled agency action, but set an imminent deadline for such action. *See* Mot. 25-26.

and standing, and that Phang satisfied the factors necessary to obtain injunctive relief). For example, Phang claims that Defendant need only "begin reviewing" these documents, with "[n]o immediate disclosure . . . required." Pl's Br. 36. As noted above, the district court's orders (as interpreted by Phang herself) do not say that. *See* pp. 3-4, *supra*. But they could have. And although engaging in a burdensome review process would still constitute irreparable harm, such an order would have given Phang a "first step toward full relief" (Pl's. Br. 34) without deciding this issue for all time. At a bare minimum, then, this Court should stay the district court's orders to the extent they require review *and production*.

**III. The Remaining Factors Favor A Stay**

Phang will suffer little harm from a stay during an expedited appeal. Phang did not move for a preliminary injunction until nearly four months after the Department announced it had fulfilled its EFTA disclosure obligations. *See Gordon v. Holder*, 632 F.3d 722, 724-25 (D.C. Cir. 2011). Parroting the district court, Phang now claims that she could not have moved earlier given "'the volume of documents' Phang had to review, coupled with 'the failure of the Attorney General to publish the

redaction log,'" which purportedly "made Phang's review far more cumbersome." Pl's. Br. 35-36 (quoting Add.45-46).

This rationale cannot logically apply to the foreign-language documents. Defendant informed Congress and the public that those documents "have not been produced" on January 30, 2026, but Phang did not file her motion until May 28, 2026. *See* Department of Justice, *Epstein Files Transparency Act–Production of Department Materials*.[5] Phang has never explained her delay as to the documents at issue. And given the Department's candid announcement, Phang's repeated assertions that Defendant "granted himself a nine-month reprieve from his statutory obligation" fall flat. *E.g.*, Pl's. Br. 40. Phang also does not address the fact that "any delay will be minimized" on an expedited appeal. *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003).

At a minimum, any harm to Phang is far outweighed by harm to Defendant. As Judge McFadden has explained in a similar context, it is "rare[]" for a litigant to show irreparable harm from a brief delay in disclosure, because such a delay does not entail "irreversible

[5] https://www.justice.gov/opa/media/1434856/dl?inline

consequences." *Org. of Am. Historians*, 834 F. Supp. 3d at 111 (collecting cases). "[T]here simply is no reason to believe that the public's interest in [this issue] will evaporate" after a brief stay. *See id.* at 112 (internal quotation marks omitted). By contrast, the records that Phang seeks cannot be unreviewed or unproduced.

For similar reasons, the public interest favors a stay to ensure an appellate resolution of the question whether and how the EFTA is privately enforceable.

**IV. Phang's Motion To Dismiss Should Be Denied**

Phang's motion to dismiss is without merit. But even if granted, it should not meaningfully impact the parties or the issues presented.

As Defendant's motion highlighted, the district court did not treat its June 25 order as conclusively resolving the foreign-language documents issue, even after Defendant stated on July 2 that Defendant was treating the June 25 order as a show-cause order and after Phang asked the district court to hold Defendant in contempt. *See* Mot. 8-10, 13-14. Notably, Defendant recently asked the district court to "clarify" how it viewed its own orders "in a manner that ensures the D.C. Circuit has an adequate opportunity to review the important issues presented."

ECF 48 at 8. The district court did not acknowledge this request beyond "assuming, without deciding, that the Court's September 16, 2026 order is appealable." Add.74.[6]

Regardless, this issue is of little if any practical importance. If Phang is correct that the June 25 order provided her with definitive injunctive relief, that order is appealable. If the September 16 order merely enforced the June 25 order, a stay of the June 25 order would leave the district court with nothing to enforce. All of Defendant's explanations about seeking a stay now, rather than shortly after the June 25 order, would still apply. If instead the September 16 order afforded injunctive relief (or if the September 16 order modified the prior injunction), it is appealable.

Thus, no matter how the orders are characterized, Defendant is seeking a stay of at least one appealable order, and staying either or both

[6] In covering its bases on appeal, Defendant is not trying to "expand the record." Pl's. Br. 15. None of Defendant's responses to Phang's baseless forfeiture arguments hinge on post-June 25 briefing. That said, Phang's assertion that only pre-June 25 briefing is relevant further highlights the district court's error in cutting off a full merits presentation at the preliminary-injunction stage.

orders would eliminate Defendant's obligation to immediately initiate review and production of the foreign-language documents.

## CONCLUSION

This Court should stay the district court's June 25 and September 16 orders pending appeal.

Respectfully submitted,

s/Michael Weisbuch
**Michael Weisbuch**
Deputy Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530-0001
(202) 322-2450
Michael.Weisbuch@usdoj.gov

**Stanley E. Woodward, Jr.**
Associate Attorney General

**Andrew J. Block**
Senior Counsel to the Associate Attorney General

**James N. Cirignano**
Counsel to the Associate Attorney General

Dated: September 29, 2026

*Counsel for Appellant*

**Certificate of Compliance for Papers Submitted Under Fed. R. App. P. 27(d)(2)(A)**

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(C) and Circuit Rule 27(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,937 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word for Microsoft 365 MSO (Version 2608 Build 20326.20142 Click-to-Run).

Dated: September 29, 2026

s/Michael Weisbuch
**Michael Weisbuch**
Deputy Associate Attorney General